# CHARLESTON.

St. Lawrence Co. *v.* Holt *and* Mathews.

Submitted January 31, 1902.    Decided April 5, 1902.

1. Equitable Jurisdiction—*Adjudication.*

An adjudication that a particular case is of equitable jurisdiction is not void, even if erroneous and cannot be disturbed by a collateral attack. (p. 360).

2. Final Decree—*Estoppel—Ejectment.*

R. conveyed to K. certain real estate in consideration of twelve thousand dollars, of which three thousand dollars was paid in cash and the residue secured by deed of trust. K. then conveyed the land to the St. L. B. & M. Co. and, later, R. caused the trustee to advertise the land for sale, under the deed of trust. Thereupon, K. and the St. L. B. & M. Co. enjoined the sale, alleging in their bill that H. & M. claimed to own 1,632 acres of the land in fee under an older grant than the one under which plaintiffs claimed and had included the same in a survey made by them, that this claim constituted a serious cloud on the title, and that plaintiffs did not know whether said surveys were accurate or said title of H. & M. valid, and praying that the sale be stayed until the title should be settled and quieted and that H. & M. and R. be required to deduce their respective titles. Although made parties and served with process, H. & M. made no appearance nor defense to the bill. The circuit court caused the St. L. B. & M. Co. to bring an action of ejectment and enjoined the sale pending the trial of the ejectment suit. R. appealed from this action and the appellate court dissolved the injunction and unqualifiedly dismissed the bill and

decreed costs against the complainants. *Held*: That the de-
cree is an absolute and final adjudication that H. & M. had no
valid title to the land and estops them to set up, in the action
of ejectment, the said older grant under which they claim, and
that the court properly allowed the St. L. B. & M. Co. to intro-
duce, on the trial of said action, the record, and decision of the
appellate court, in said chancery cause, as evidence, and in-
structed the jury that the legal title to the land was in said
trustee.   (p. 372).

Error to Circuit Court, Pocahontas County.

Action of ejectment by the St. Lawrence Boom and Manu-
facturing Company against Homer A. Holt and another.   From
a judgment in favor of plaintiff, defendants bring error.

*Affirmed.*

Mollohan, McClintic & Mathews, for plaintiffs in error.

Brown, Jackson & Knight and Campbell, Holt & Camp-
bell, for defendant in error.

Poffenbarger, Judge:

On the 20th day of August, 1881, W. L. Rawson conveyed to
Porter Kinports, by deed with covenant of general warranty, a
tract of one thousand six hundred and thirty-two acres of land
and another of eight hundred acres and a lease of seven hundred
and eighty acres with the right to remove the timber from the
last one, in consideration of the sum of twelve thousand dollars,
of which three thousand dollars was paid in cash and, for the
residue, Kinports executed his three bonds of three thousand
dollars each, payable in one, two and three years, respectively,
to secure the payment of which Kinports conveyed the land to
A. C. Snyder, trustee, on the 3rd day of October, 1881.   Later,
Kinports conveyed the property to the St. Lawrence Boom and
Manufacturing Company.   Some years afterwards, the trustee
advertised all the land for sale.   Thereupon Kinports and the
St. Lawrence Company filed their bill against Rawson, A. C.
Snyder, trustee, Homer A. Holt and A. F. Mathews, and upon
the bill an injunction was granted, restraining the trustee from
making sale of the one thousand six hundred and thirty-two
acre tract.

The principal grounds set forth in the bill for enjoining the

sale were, in substance, as follows: That "there is a serious
cloud upon the title of at least said tract of one thousand six
hundred and thirty-two acres of land, and that owing to that
fact and the other facts herein stated the sale of said property
as advertised would inevitably result, as the plaintiffs believe and
charge, in a great sacrifice of said property and in the irremedi-
able and great damage to the plaintiffs; that the said H. A.
Holt and A. F. Mathews claim to own said tract of one thou-
sand six hundred and thirty-two acres of land in fee under an
older grant than that under which said Rawson and the plain-
tiffs claim, and have asserted their claim to the representatives
of the plaintiffs and have threatened them with a suit therefor,
and there is now pending in the circuit court of said county of
Pocahontas, as they are informed, believe and charge, another
suit brought by the vendors of said Holt and Mathews, and
which said Holt and Mathews are prosecuting, the object of
which is to recover of one White a considerable body of land
lying within the grant, under which said Holt and Mathews
claim said one thousand six hundred and thirty-two acres of
land."

Other important allegations were that the one thousand six
hundred and thirty-two acre tract constituted the most valuable
portion of the property; that more than seven thousand dollars
had been paid; that the plaintiffs had no protection against the
loss which they would sustain if compelled to pay the debt and
lose the land by paramount title; that Rawson was not in the
actual possession of the land at the time of the sale; that neither
of the plaintiffs had been put or were then in the actual posses-
sion thereof; that they claimed and upon information alleged,
that at the time of the purchase by Rawson and conveyance to
him, his vendor and those, under whom he claimed, had held
under color of title and under a grant from the commonwealth
of Virginia for more than fifteen years preceding said purchase
actual continuous adversary possession of said land; that Raw-
son and the plaintiffs, respectively, were invested by the con-
veyance to them, respectively, with all the title to said land,
which had been acquired or was held by the grantors of Rawson;
that Holt and Mathews claim to have recently caused a survey to
be made of the exterior boundaries of their said grant and had
included therein the said one thousand six hundred and thirty-
two acres as well as the land claimed in said suit against said

White, and have exhibited to the attorney of the plaintiff, what they claimed to be a plat of said survey, showing the above stated facts; that if their paper-title was sufficient to cover the land of said White, it would be sufficient to cover said one thousand six hundred and thirty-two acres; that whether said surveys were accurate, or said title of Holt and Mathews was valid, the plaintiffs did not know; that the conflicting claims were matters of wide notoriety in said counties of Pocahontas and Greenbrier, where said lands were advertised to be sold, and among those persons, who, under other circumstances, would be likely to be bidders therefor; that a sale under such circumstances would necessarily lead to a sacrifice of said one thousand six hundred and thirty-two acres and the other land mentioned in the trust deed; and that the lands were purchased for the timber, and they expected to 'get them all, and would lose greatly, if any part of the land were lost to them.

The prayer of the bill was, that the sale be enjoined, and that Snyder, trustee, and Rawson should be enjoined from enforcing the payment of said purchase-money, until the cloud on the title to said one thousand six hundred and thirty-two acres should be removed, that Holt and Mathews be required to produce their title to said land, and that the title thereto might be determined and quieted. The injunction was granted on the 3rd day of July, 1885.

Rawson answered the bill, exhibiting a grant from the commonwealth of Virginia, dated the 3rd day of June, 1856, to May and Cleek for the one thousand six hundred and thirty-two acres, a conveyance from May of his undivided two-thirds of the land executed on the 10th day of June, 1881, and a conveyance from the executor of Cleek for the remaining undivided one-third, dated September 12, 1881. He denied that he was not in possession of the land when he sold to Kinports, and averred that he had the actual and uninterrupted possession of all the land, and especially of the one thousand six hundred and thirty-two acres at the time he sold and conveyed it, and that he and those under whom he claimed had had such possession under a good and sufficient title for over twenty years, as he was informed and believed; that there were houses, enclosures and improvements extending into it on tracts adjoining the one thousand six hundred and thirty-two acres belonging to Elijah May, one of the respondent's grantors, which houses were occupied by

May's tenants, which facts were fully known to Kinports' agents; that the possession of May was open and notorious; that Kinports was placed in the actual possession thereof; and that if he had not remained so the fault was not respondent's. He denied that Holt and Mathews had any subsisting title to any part of the land; that plaintiffs had ever been approached by Holt and Mathews, their agents or attorneys, with threats of suits or assertions of any claims whatever; that there was no suit pending or proceedings against him or the plaintiffs, in which the title was in any manner called in question by Holt and Mathews or any one else; that any notice to quit or any process had been served on plaintiffs; and that he ever heard of any question in regard to the title, except through the St. Lawrence Boom and Manufacturing Company, its agents or attorneys. Additional matters denied and averred in the answer as well as the evidence in the case will be found in *Kinports* v. *Rawson,* 29 W. Va. 487.

A special judge was selected to try the cause, and, on the 13th day of June, 1886, it was heard in vacation on the bill, answer of Rawson, general replication thereto, exhibits filed, depositions, and the motion of defendant, Rawson, to dissolve the injunction, and the order made and entered was in part as follows: "It was the duty of the trustee in the deed of trust in the bill mentioned to take the proper steps to remove the cloud on the title, which in the opinion of said judge hangs over the property mentioned in the trust-deed before proceeding to execute said trust by making sale of said property; and that on his failure so to do any party injured has, and the plaintiffs in said bill have the right so to do; and the said judge being further of opinion, that although in the present state of the case under the act of the legislature (Acts 1882, ch. 131, p. 341,) he has no power or authority to direct an issue in this cause to try the title to said lands, *and said title conveyed to the plaintiffs has not been shown to be clearly defective, and no suit to recover the same of them has been brought or threatened,* yet he is of opinion, that to sell the land under the circumstances shown to exist and without the cloud on the title would result in the sacrifice of said property, which it is the duty of the court to prevent." Then the motion to dissolve was continued until the next term of the circuit court of Greenbrier County, and the St. Lawrence Company was directed to bring an action of ejectment

against Holt and Mathews to try the title to the land. On the 20th day of April, 1886, it was agreed by the attorneys for the parties that the action of ejectment had been brought, and, on the 27th day of April, 1886, the cause was heard on the papers formerly read, the agreed facts and the motion of the defendant, Rawson, to dissolve the injunction, while the action of ejectment was pending and undetermined, and the court refused to dissolve the injunction, unless the plaintiff in said action should thereafter fail to prosecute the same to final determination with proper diligence. From the orders made on the 13th day of January, 1886, and the 27th day of April, 1886, Rawson appealed, and the disposition of the case made by this Court on that appeal, will be found in 29 W. Va. 487.

Holt and Mathews were served with process in said suit, but never appeared. They refused to answer or make any defense to the bill, although a rule was issued against them requiring them to answer.

This Court having dissolved the injunction and dismissed the bill, Snyder, trustee, again advertised the land for sale, and Kinports and the St. Lawrence Company obtained another injunction to the sale and to prevent the collection of the money until the title should be quieted. The bill in this second suit set out more particularly the nature of the claim of Holt and Mathews than did the one filed in the first suit, and prayed that they might be required to produce their title and that the rights of all the interested parties might be determined. This bill was against the same parties, in reference to the same subject-matter and for the same purpose as the former bill. It was demurred to by the defendants, and the demurrer being overruled, all of them answered it and insisted that the matters set up in it were *res judicata.* Then Rawson filed a supplemental and amended answer, alleging defects in the title set up by Holt and Mathews in their answer. Holt and Mathews, treating the amended answer of Rawson as a cross-bill, filed an answer to it. Then Holt and Mathews moved the court to require the plaintiffs to elect between that suit and the action of ejectment which was still pending; to direct an issue, to try the question of title upon the cross-bill and answer; to refer the cross-bill and answer to take proofs and report; and to order a survey in the cause for the purpose of locating the respective claims of the parties. All these motions were denied and a final decree en-

tered on the 10th day of July, 1889, dissolving the injunction, ordering Kinports to pay the balance of the purchase-money secured by the deed of trust within sixty days, and that in case he should fail to do so, the land be sold by special commissioners appointed for the purpose. From this decree Holt and Mathews appealed and it was substantially affirmed by this Court March 21, 1892, as will be seen from the report of the case found in 36 W. Va. 237. In that case the circuit court held that all the matters involved in it were *res judicata* by the former decision of this Court in the first chancery cause between the parties. It was affirmed in all respects. But in petition for rehearing, not reargument, the following was stricken out of the decree of the lower court as improper: "The court is of opinion and doth adjudicate that the claim set up by Holt and Mathews in this cause to the one thousand six hundred and thirty-two acre tract of land conveyed by the defendant William L. Rawson to the plaintiff Porter Kinports by deed bearing date the 3d day of October, 1881, as set out in the pleadings and exhibits in this cause, as to any portion thereof is without foundation and constitutes no claim upon the title which said Kinports derived from said Rawson to said tract of land, and that this fact has been adjudicated by the Supreme Court of Appeals of West Virginia in a suit in chancery lately pending in said supreme court between the said Porter Kinports and the said St. Lawrence Boom and Manufacturing Company, as plaintiffs, against the said William L. Rawson, A. C. Snyder, trustee, Homer A. Holt and Andrew Mathews, as defendants, which suit is set up in the aforesaid answer of William L. Rawson, and the record thereof is exhibited with said answer." The reason assigned in the supplemental opinion of the court, delivered by JUDGE LUCAS, for disapproving this part of the decree is that it was not the intention of the court to affirm "the above construction which the circuit court has put upon the former action and order of this Court at April term, 1887." The opinion on rehearing then proceeds as follows: "What we hold is that the plea of *res judicata* was properly sustained by the circuit court, and that it was in the discretion of that court either to dissolve the injunction and dismiss the bill, or to dissolve the injunction and have the sale made and proceeds distributed under its own discretion; and that we would not interfere with the exercise of that direction. It is well settled that, where the bill does

not entitle the plaintiff to relief, no relief can be granted to one defendant as against another. Therefore, in this suit, nothing could be settled as between Rawson and Matthews and Holt. We were not called upon nor did we attempt to interpret the former decree of this Court of April term, 1887, except so far as was necessary to determine whether the doctrine of *res judicata* applied to the bill. Upon ascertaining that it did, we stopped at that point, and did not decide anything as to the 'ultimate rights of the parties'—that is of the co-defendants, as between themselves—leaving such rights just as they stood before the bill in this case was filed. So much of the decree below, therefore, as we have quoted above, or as in any manner passes upon the ultimate rights of the co-defendants, must be stricken out and reversed, and the residue affirmed." This is quoted here for the reason that there is much contention in the argument of this case as to what the meaning and effect of this modification of the first opinion delivered in the case is, and as to how far it was intended, if at all, to modify and limit those parts of the former opinion which say, "The present appellants were made defendants, (in the former suit,) and were at liberty to avail themselves of every defense to which they have resorted in the present case. If they failed to do so at that time, they certainly cannot do so in a second suit, brought to reopen all the questions formerly decided. They could in that case have answered the bill as they have done in the present case, set out and insisted upon their title, and demanded and obtained a jury. * * * At all events, and without anticipating questions as to the ultimate rights of the parties which may hereafter arise, it is quite clear that the appellants could not avail themselves of the pendency of the present suit to reopen and relitigate questions already decided. All that we can say about the matter is that the former adjudication, whether right or wrong, is the law of the particular case, and the circuit court did not err in sustaining the plea of *res judicata.*" Then after showing that the court had jurisdiction to settle all the matters in dispute in the former suit, the opinion concludes as follows: "The former case being admitted on all hands, even by the appellants themselves, to have been precisely identical with the one we are now considering, the questions then adjudicated, whatever they were, must be held to estop, not a portion of the litigants only, but all of the parties to the suit."

While these two chancery suits were successively pending, the action of ejectment which had been commenced in Pocahontas County in March, 1886, was pending and undetermined. On the 21st day of June, 1894, the trial of it was commenced and, upon the trial, the plaintiffs introduced, over the objection of the defendants, the record in the first chancery cause, after showing that A. C. Snyder, trustee, Homer A. Holt, A. F. Mathews and the St. Lawrence Company, parties to the ejectment suit, are the same parties who were parties to said chancery cause, and that the said William L. Rawson, who was a party to the chancery cause, is the same Rawson who conveyed the land to Kinports and was secured in the deed of trust from Kinports to Snyder, trustee, and that Kinports, who was a party to said chancery cause, is the same Kinports to whom Rawson conveyed and who conveyed the land to Snyder, trustee, and to the St. Lawrence Company. Then, at the request of A. C. Snyder, trustee, the court instructed the jury that, by the decision of the court of appeals in said chancery cause, the title to the land in controversy was adjudged to be in him (Snyder, trustee,) as against the said defendants and that he was entitled to recover the same in the action. The defendants, having objected to this instruction, excepted to the ruling of the court, and the jury found in accordance with the instruction, and, judgment having been rendered accordingly, they obtained a writ of error and *supersedeas,* and the question before this Court is whether the matters in controversy in the action of ejectment are *res judicata* by the decision in said first chancery cause.

That a judgment or decree may be a bar to a subsequent action between the same parties concerning the same subject-matter, the first requisite is, that the court pronouncing the judgment or decree must have jurisdiction of the parties and the subject-matter. All judgments and decrees of courts which do not belong to that class called inferior courts and courts of limited jurisdiction, are conclusive in themselves, unless clearly beyond the jurisdiction of the tribunals from whence they emanate. 1 Herman Est. & Res., s. 346. They cannot be impeached, when pleaded in bar or given in evidence in other tribunals, because of a wrong judgment, based upon the erroneous application of legal principles, or insufficiency of the evidence, or that the evidence was false, or for the reason that the writ and service were defective. "The

question of the sufficiency of service, or whether property attached was subjected to seizure is one of jurisdiction. A judicial determination of jurisdiction is binding upon the parties until set aside or reversed in a direct proceeding. The judgment of a court of superior jurisdiction may be collaterally attacked upon the ground that the court rendering such judgment had not jurisdiction of the action. But such facts or circumstances only can be shown or relied on, in support of such attack, as affirmatively appear on the face of the record, or what, under the law as it read at the date of the judgment, constituted the judgment-roll. Where a judgment recites the fact that the defendant has been duly served with process, this a direct adjudication by the court upon the point, and is as conclusive on the parties as any other fact decided in the cause, provided it does not affirmatively appear from other portions of the record constituting the judgment-roll, that the recital is untrue. * * * * The record of a court of superior jurisdiction imports absolute verity; it cannot be collaterally attacked by proof *aliunde.* If the court has jurisdiction of the subject-matter and the parties, it is altogether immaterial how grossly irregular or manifestly erroneous its proceedings may have been; its final order cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached. And this even where the judgment would without question be reversed on appeal." *Id.* s. 269. "When a court of general jurisdiction pronounces judgment, the presumption is in favor of its jurisdiction, and it is not incumbent upon one who bases a right upon such judgment to aver facts essential to the existence of jurisdiction. And whatever is upon the records of such court is presumed to be rightfully there." Black on Judg., s. 270. These general principles are admitted by all parties in this controversy, it seems, but they are stated here for the purpose of throwing light upon the discussion of the real question presented.

Holt and Mathews were served with process but refused to appear and make any defense. The court had jurisdiction of them as parties and the presumption is that it had jurisdiction of the subject-matter of the suit, but this presumption may sometimes be overthrown by what the record itself shows, as has been stated. That record shows that the object and purpose of the suit was to bring before the court the vendor of the land in question, who held a lien by deed of trust upon it and

was seeking the enforcement of that lien, in the country, by the summary process provided by statute, and to bring before the court also Holt and Mathews who claimed title to the land superior to that which Rawson had held and which had come down by successive conveyances into the hands of the St. Lawrence Company, and compel Rawson on the one side, and Holt and Mathews on the other, to litigate the question of title, and, in the meantime, stop the collection of the money by injunction. It was a bill purporting to be a bill in the nature of a bill of interpleader, alleging an interest of the plaintiffs in the subject-matter of the litigation and calling upon the defendants to come in and litigate their conflicting claims, affecting the interest of the plaintiff, in that suit. Holt and Mathews having failed to appear and make any defense to the bill, a rule was taken against them requiring them to plead. The court having refused to dissolve the injunction, upon the motion of Rawson, he appealed and this Court dissolved the injunction and dismissed the bill as to all of the parties, without deciding and saying, in terms, whether Holt and Mathews were necessary parties, or whether they could be required to submit their claim of title for adjudication in that suit. Not only were they made parties and retained as parties until final determination of the cause, without any intimation from the court that they were improper parties, or that their claim could not be adjudicated in that suit, but there are some things in the opinion of the court from which it may be inferred that they were considered proper parties and that the matters in difference between them and the plaintiffs might have been adjudicated there. At page 497 it is said, "From anything, that appears in the evidence, there is nothing whatever in the claim of Holt and Mathews. If they have any *bona fide* claim to the one thousand six hundred and thirty-two acres, it nowhere appears in the record. The most, that can be claimed, is, that Holt and Matthews claim that they own a seventeen thousand five hundred acre survey, and that they caused it to be surveyed, and that the survey as thus laid down included this one thousand six hundred and thirty-two acres. The bill alleges, that they claimed the one thousand six hundred and thirty-two acres under a grant from the commonwealth older than the patent under which Rawson holds. Of this there is not the slightest proof; and whether they own the seventeen thousand five hundred acre survey is nowhere

shown, and whether the one thousand six hundred and thirty-two acres were included in that doubtful survey by mistake or otherwise is not at all apparent. The most, that can be said, is, that Holt and Mathews claim the one thousand six hundred and thirty-two acres, and it has become generally known, that they claim it, and that the sale would be injured by such claim  *
* *  It is true, equity will require a real cloud to be removed from the title to land before it will suffer the land to be sold under a trust; but it must be such a cloud, as reasonably and necessarily results in injury to the debtor, unless it be removed. But here is no cloud." If all this be taken to amount to an exercise of jurisdiction in respect to Holt and Mathews and their claim, which has since turned out to have been one not cognizable in equity, deciding that they have no claim upon the property nor any right or title to it, it raises the very important question, whether the judgment or decree of a court of general jurisdiction having the parties before it, is given any force or validity by the erroneous decision of the court that it has jurisdiction to hear and determine such cause of action.

"Acts done by a court which has no jurisdiction either over the person, the cause, or the process, are said to be *coram non judice.*" Bouvier's Law Dic. "Where an action is brought and determined in a court which has no jurisdiction over the matter, it is said to be *coram non judice.*"  7 Am. & Eng. Ency. Law, (2d Ed.) 595. That such judgment or decree could not stand for a moment, if attacked in a direct proceeding by motion in proper time in the court below, or by appeal, or writ of error, or bill of review, there is not the slightest doubt, but if it is merely erroneous and not absolutely void, it is binding until reversed, and, if never reversed by a direct proceeding, it is binding forever or until it expires by limitation. It can never be attacked in any collateral proceeding and all matters settled by it are *res judicata* in every court so long as it remains unreversed. But where a court erroneously pronounces a decree in respect to a matter which is not cognizable in that court, but belongs to the jurisdiction of another court, but deciding that it has jurisdiction when it has not, is the decree absolutely void? If so, it may be ignored by all courts and is worthless for any purpose. There are a number of cases which hold that such a judgment or decree is *coram non judice,* but they all appear to have been judgments of inferior courts, in respect to which jur-

isdiction is never presumed, but must always be affirmatively shown, or judgments in special proceedings. *Rood* v. *Eslava*, 17 Ala. 430; *Lathem* v. *Egarton*, 9 Cowen, (N. Y.) 227; *Mills* v. *Martin*, 19 Cowen, (N. Y.) 33; *Wise* v. *Withers*, 3 Cranch 337; *Gorton's Appeal*, 93 Pa. St. 361. It is laid down in Story's Eq. Pl., s. 10, that a bill must state a case within the appropriate jurisdiction of a court of equity, and that if it fails so to do, the error is fatal in every stage of the cause, and can never be cured by any waiver or course of proceedings by the parties. It is there further stated that, although many errors and irregularities may be waived by the parties or, cured, by not being objected to, the court itself cannot act except upon its own intrinsic authority in matters of jurisdiction; and every excess will amount to a usurpation, which will make its decretal orders a nullity, or infect them with a ruinous infirmity. In *Munday* v. *Vail*, 34 N. J. Law, 418, it is said, "Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this there are three essentials: First. The court must have cognizance of the class of cases to which the one to be adjudged belongs. Second. The proper parties must be present. And, Third. The point decided must be, in substance and effect, within the issue." This was quoted with approval in *Reynolds* v. *Stockton*, 140 U. S. 254, 268, the court saying, "We regard the views suggested in the quotation from the opinion as correct, and as properly indicating the limits in respect to which the conclusiveness of a judgment may be invoked in a subsequent suit *inter partes.*" But in both of these cases the decision was upon the ground that the judgment pronounced was without the issue made by the pleadings, and not that the court had erroneously taken cognizance of a cause of action not within its jurisdiction. The pleadings did not even colorably present the issue decided. In *Windsor* v. *McVeigh*, 93 U. S. 282, it is said: "All courts, even the highest, are more or less limited in their jurisdiction; they are limited to particular classes of actions, such as civil or criminal; or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character, such as arise on navigable waters, or relate to the testamentary disposition of estates; or to the use of particular process in the enforcement of their judgments. * * * Though the court may possess jurisdiction of a cause, of the subject matter, and of

the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary, upon the defendant. * * * The decree of a court of equity upon oral allegations, without written pleadings, would be an idle act, of no force beyond that of an advisory proceeding of the Chancellor. And the reason is, that the courts are not authorized to exert their power in that way." But the decision of that case turned upon the loss of jurisdiction of the person. Having once appeared in the action, his appearance was stricken out and the court nevertheless proceeded to judgment. Even under these circumstances, three members of the court dissented. That portion of the opinion from which this quotation is made, as well as the quotation from Story, simply announces general propositions, without any citation of precedents. *Nulton* v. *Isaacs,* 30 Grat. 726, following *Windsor* v. *McVeigh, Held:* That judgments of the United States court, rendered in a cause in which citizens of Maryland were plaintiffs and a bank was defendant, brought to have the assets of the bank administered, and upon petition and notice, void. In the opinion it is said that the defendant was entitled to a trial by jury. But, in the syllabus, the true reason is stated that the creditor and debtor were both citizens of Virginia, by reason of which, the United States court had no jurisdiction. It is also stated in the opinion that a mere order for payment on a summary rule to show cause, has not the force and effect of a judgment but is void on its face as a judgment. So this authority is not conclusive of the question by any means. Of it, it is said in Vanfleet's Col. Attack, s. 100, "Possibly this decree of the federal court was erroneous, which I doubt; but certainly it was not void. The court had jurisdiction over the main cause, and if it mistook an improper proceeding for a proper one, that would not destroy its jurisdiction." In the same section this work says, "An erroneous adjudication that a particular case is of equitable cognizance even where the bill shows that there is an adequate remedy at law, is not void." In *Mellin* v. *Moline Iron Works,* 131 U. S. 352, 367, Mr. Justice Harlan says: "It is, however, contended,

that the Furnace Company could not rightfully invoke the aid of a court of equity to remove this lien or encumbrance, until it had, by obtaining judgment for its debt and suing out execution, exhausted its legal remedies.    But that was one of the questions necessary to be determined in the suit brought by the company, and any error in deciding it would not authorize even the same court, in an original, independent suit, to treat the decree as void." So in Virginia: "A county or corporation court grants administration of the estate of a foreigner, who died abroad, and who had no residence in the county or corporation at the time of his death, and had no estate of any kind there, so that in truth the state of facts is not such as to give the court jurisdiction to grant administration in the particular case, according to the provisions of the statute, 1 Rev. Code, chapter 104, sections 12, 32, yet *Held:*    That such a grant of administration is not a *void* but only a *voidable* act and, therefore, rightful acts of, and fair dealings with, the administrator, consumated before his administration is revoked or superseded, cannot be impeached." *Fisher* v. *Bassett,* 9 Leigh 119. Tucker, President, delivering the opinion of that court, says: "The county court is a court of record, and its judgments or sentences cannot be questioned, collaterally, in other actions, provided it has jurisdiction of the cause.    And this is to be understood as having reference to jurisdiction over the subject-matter; for though it may be that the facts do not give jurisdiction over the particular case, yet if the jurisdiction extends over that class of cases, the judgment cannot be questioned; for then, the question of jurisdiction enters into and becomes an essential part of the judgment of the court."    To the same effect is *Burnley* v. *Duke,* 2 Rob. 102, 129.    In *Smith* v. *Henning,* 10 W. Va. 596, this doctrine is approved and that case as well as *Fisher* v. *Bassett* is cited with approval in *Hall* v. *Hall,* 12 W. Va. 1.    There, JUDGE HAYMOND says: "There is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done till the contrary appears; the rule applies as well to every judgment or decree, rendered in the various stages of its proceedings from the initiation to their completion, as to their adjudication that the plaintiff has a right of action.    Every matter becomes a part of its record, which thenceforth proves

itself, without referring to the evidence on which it has been adjudicated."

There are innumerable authorities bearing upon the question, but very few of them pass upon the exact point. So far as they do touch it, they are in conflict, as has been shown. It is beyond question that the distinction between law and equity jurisdiction often becomes a question of intricacy and nicety. That is illustrated in the chancery cause which is relied upon here by the defendants in error. The court seems to have considered that the case presented by the bill properly belonged to equity jurisdiction. Later, *Heavener* · v. *Morgan,* 30 W. Va. 335, expressly decided that the cause of action imperfectly stated in it, and which has subsequently turned out to be cognizable only at law, as appears from matters outside of the record, was one of equitable cognizance. Still later, the principles announced in that case were overruled. *Miller* v. *Morrison,* 47 W. Va. 664. Numerous cases come into the courts in which the question whether they belong to the law side or to the chancery side of the jurisdiction of the court is vigorously debated and requires pains-taking and laborious investigation for its determination. Ordinarily, the matter is determined upon a demurrer to the bill, and the action of the court below is subject to correction on appeal. Why should a defendant, who is called into a court of equity to answer a bill, purporting to set out grounds for equitable relief, be permitted to ignore the process of the court, stand out against it, make no objection to its jurisdiction, allow the proceeding to go on to final determination, and then, in a collateral way, take advantage of the court's error? If an error of that kind affords ground for invalidating the judgment or decree of a court wherever it may be set up or introduced, in a justices' court, before a board of commissioners having judicial power, but limited and inferior in nature and extent, or elsewhere, why should not all other errors be so? If one court can declare it void, all can declare it void. It is deemed better to appeal to the reason of the rule, than to undertake to say, after going through numerous volumes of reports and text-books, what the weight of authority is. "Justice requires that every case should be once fairly tried, and the public tranquilly demands that having been once so fairly tried, all litigation of that question between those parties should be concluded forever. Were it other-

wise there would be no security for any person and great injustice might be done under color and pretense of law. To ascertain the grounds and motives which may have led to the final determination of a question once settled by the jurisdiction to which the law has referred it, would be extremely dangerous, and it is better for the general administration of justice, that one individual should be inconvenienced than that the whole system of jurisprudence be overthrown and endless uncertainty introduced." Herman Estoppel, Res. s. 100. "If the principle once prevails, that any proceeding of a court of competent jurisdiction can be declared to be a nullity by any court, after a writ of error or appeal is barred by limitation, every county court, or justice of the peace in the union, may exercise the same right, from which our own judgments or process would not be exempted. The only difference in this respect between this and any other court is, that no court can revise our proceedings; but that difference disappears, after the time prescribed for a writ of error or appeal to revise those of an inferior court of the United States or of any State; they stand on the same footing in law. The errors of the court do not impair their validity; binding till reversed, any objection to their full effect, must go to the authority under which they have been conducted. If not warranted by the constitution or law of the land, our most solemn proceedings can confer no right which is denied to any judicial act under color of law, which can properly be deemed to have been done *coram non judice;* that is, by persons assuming the judicial function in the given case without lawful authority." *Voorhees* v. *Bank,* 10 Pet. (U. S.) 449, 474. "It is among the elementary principles of the common law, that whoever would complain of the proceedings of a court, must do it in such time as not to injure his adversary by unnecessary delay in the assertion of his right. If he objects to the mode in which he is brought into court, he must do it before he submits to the process adopted. If the proceedings against him are not conducted according to the rules of law and the court, he must move to set them aside for irregularity; or, if there is any defect in the form or manner in which he is sued, he may assign those defects specially, and the court will not hold him answerable till such defects are remedied. But if he pleads to the action generally, all irregularity is waived, and the court can decide only on the rights of the parties to the subject mat-

ter of controversy; their judgment is conclusive, unless it appears on the record that the plaintiff has no title to the thing demanded, or that in rendering judgment they have erred in law; all defects in setting out a title, or in the evidence to prove it, are cured, as well as all irregularities which may have preceded the judgment. So long as this judgment remains in force, it is in itself evidence of the right of the plaintiff to the thing adjudged, and gives him a right to process to execute the judgment; the errors of the court, however apparent, can be examined only by an appellate power; and by the laws of every country a time is fixed for such examination, whether in rendering judgment, issuing execution, or enforcing it by process of sale or imprisonment. No rule can be more reasonable, than that the person who complains of an injury done him, should avail himself of his legal rights in a reasonable time, or that that time should be limited by law " *Idem.*

Of course there are cases that are so clearly beyond and without the jurisdiction of a court that no question could possibly arise. In such case, the want of jurisdiction would be clear, and be disclosed by the record itself. Criminal cases are never cognizable by courts of equity. Under no circumstances could that court take jurisdiction of them. But a court of equity has jurisdiction, under certain circumstances, to inquire into and adjudicate matters relating to title to real estate. It will uphold and enforce a superior equity against a mere legal title, and compel conveyance of the legal title to the equitable owner. At the suit of one in possession of real estate claiming good title thereto, it will remove a cloud from his title, and cancel the invalid papers under which the adverse claimant undertakes to set up title. Hence, it cannot be said that because a bill filed in a court of equity relates to real estate or its title and the ownership thereof, it presents a cause of action not cognizable by such court. In every such case, the court must determine whether it has, or has not, jurisdiction. It presents enough to set in motion and call forth the exercise of the judicial power of that tribunal. It must consider and determine and if, in doing so, it arrives at an erroneous conclusion, and takes jurisdiction when it ought to decline it, the error is very similar in its nature to any other error and the public policy which demands a cessation of a controversy within a reasonable time applies as clearly to it as to any other. It is a mere matter of remedy or

procedure, and if error, in respect to it, renders a decree or judgment a mere nullity, it is difficult to see why the result would not be the same if a court should render judgment in an action of *assumpsit* when the proceeding ought to have been in debt, or in debt when it ought to have been in covenant. To hold otherwise, would be to throw open the doors to never ending litigation, unsettle all judicial proceedings, and produce interminable confusion. The very reason for which appellate tribunals have been established would be largely ignored, and the principle of *res judicata,* which has been adopted in the jurisprudence of every civilized country and has called forth high enconium from the ablest judges and most celebrated authors, would be practically laid aside. The rule that a court has power to determine its own jurisdiction when the question is debatable at all applies in ascertaining whether it has jurisdiction of the person. "The rule is, that if the notice is defective or irregular, but not to the extent of being substantially worthless, a judgment by default entered thereon will be regular and liable to be corrected or set aside on motion, or reversed above, but not absolutely *void,* and hence not open to collateral attack." Black on Judg., s. 83. Of the other question, the court of appeals of Virginia says in *Cox* v. *Thomas,* 9 Grat. 312, 326: "The circuit court is a court of general jurisdiction, taking cognizance of all actions at law between individuals, with authority to pronounce judgments and to issue execution for their enforcement. The jurisdiction of the court to take cognizance of all controversies between individuals in proceedings at law, need not appear on the face of the proceedings. Where its jurisdiction is questioned it must decide the question itself. Nor is it bound to set forth on the record the facts upon which its jurisdiction depends. Wherever the subject matter is a controversy at law between individuals, the jurisdiction is presumed from the fact that it has pronounced the judgment. And the correctness of such judgment can be enquired into only by some appellate tribunal. * * * Thus it is said in the case of the *Marshalsea,* if the court of common pleas holds plea in an appeal of death, and the defendant is attainted, it is *coram non judice.* But if the same court in a plea of debt award a *capias* against a duke, which by law does not lie against him, and that appear in the writ itself, although the writ be against law, yet as the court has jurisdiction of the cause, the sheriff

arresting by force of the writ is excused. So also if the court of common pleas holds plea in debt without original, it is not void, for they are judges of those pleas, and it cannot be said the proceeding is *coram non judice*. So here the judges of the circuit courts are judges of pleas against sheriffs, whether carried on by action at common law or by notice under the statute; though in a given case, they may err in determining on their jurisdiction." Vanfleet on Col. Attack, s. 1, says: "And as no one would think of holding a judgment of the court of last resort void if its jurisdiction were debatable or even colorable, the same rule must be applied to the judgments of all judicial tribunals. This is the true theory of judicial action when viewed collaterally. If any jurisdictional question is debatable or colorable, the tribunal must decide it; and an erroneous conclusion can only be corrected by some proceeding provided by law for so doing, commonly called a Direct Attack." These considerations and authorities lead to the conclusion that in a case in which it is questionable or debatable whether a court has jurisdiction, and it erroneously decides that it does have, its judgment or decree is erroneous and voidable only, and subject to correction only by proper proceedings in the court which rendered it or by an appellate court, and is not void or open to collateral attack.

The principle thus far discussed is applicable in this aspect of the case: Plaintiffs in error claim title to the land never was adjudicated against them and in favor of the plaintiffs, because a court of equity had no lawful authority, power or jurisdiction to determine the question of title. They insist that the right of trial by jury in questions of title is a constitutional right which no court had the power to take away from them. This amounts to a mere assignment of a reason upon which it is insisted that the question was not determined. There are instances, as has been shown, in which a court of equity may take cognizance of matters effecting title. Suppose a bill is filed to cancel a deed as a cloud upon plaintiff's title. Whether the deed is valid or invalid may be a very perplexing question. If invalid a court of equity has an undoubted right to cancel it and no jury is required. If valid, it has no right to do so. But if upon that bill, the court erroneously cancel a valid deed, what is the remedy of the injured party? Can he treat the decree as a nullity? By no means. If he does not

have it corrected by some direct proceeding, he is forever bound
by it, and yet, in that way, he is deprived of his property with-
out a trial by jury.   By his failure to submit himself to the
rightful and indisputable jurisdiction of the court, he impliedly
waives what he may undoubtedly waive by express agreement.
It may be found for some reason that the court did not decide
the question of title, but that finding cannot be predicated upon
the theory that the court had no power to do so.   It was a court
of general jurisdiction, having cognizance of all causes in
equity.   For aught that appeared by the record before it, at
the time it acted, the matter in controversy may have belonged
to that class of causes.   In addition to other authorities on
jurisdiction where *res judicata* is relied upon, see *Renick* v. *Lud-
ington*, 20 W. Va. 511.

This brings us to the vital question in the case:   Did the
court decide that Holt and Mathews have no title to the land?
Was the bill such as called upon them in a legal sense to answer
and enabled them to litigate the question of title?   If either
of these questions be answered in the affirmative, the decision in
the chancery suit is a bar to any assertion of title on their part.
As to the first, it is so elementary that no authority need be
cited.   The second is hardly less firmly settled.   "An
adjudication by a court having jurisdiction of the sub-
ject matter and the parties is final and conclusive, not only
as to the matters actually determined, but as to every other
matter which the parties might have litigated as incident there-
to, and coming within the legitimate purview of the subject
matter of the action.   It is not essential that the matter should
have been formally put in issue in a former suit, but it is suffi-
cient that the status of the suit was such that the parties might
have had the matter disposed of on its merits."   , *Sayre* v. *Har-
pold*, 33 W. Va. 553; *Tracy* v. *Shumate*, 22 W. Va. 474; *Wand-
ling* v. *Straw*, 25 W. Va. 692; *Biern* v. *Ray*, 49 W. Va. 129;
*Bruen* v. *Home*, 2 Barb. (N. Y.) 586; *Embery* v. *Conner*, 3
Coms. (N. Y.) 522; *McDowell* v. *McDowell*, 1 Bail. Eq. (S. C.)
324; *Davis* v. *Brown*, 94 U. S. 35; *New Orleans* v. *Bank*, 167
U. S. 371.   In *Sayre* v. *Harpold*, it was applied to a set-off
which might have been, but was not, pleaded in defense.   In
*McDowell* v. *McDowell*, a testator had provided payment of
five hundred dollars to his widow in lieu of her dower.   After
accepting the money, she sued for, and recovered in an action

at law, her dower.   On a bill to review the judgment, the court
held that the matter set up in the bill might have been relied
upon as defense to the action at law.   These authorities clearly
indicate the line of inquiry.   It is necessary to examine the
pleadings and ascertain from them what was in issue either by
direct allegation, or by reason of the fact that one of the parties
was bound by the pleadings against him to assert his rights by
way of defense or be thereafter forever barred as to them.

Holt and Mathews never having appeared, they put nothing
in issue by allegation.   If their rights were passed upon, it is
because the matter alleged in the bill by the plaintiffs was such
that they were bound to answer it.   It alleged that they
claimed to own said land in fee under an older grant than that
under which the plaintiffs claimed, but did not fully set out or
designate the instrument under which the adverse claim was
set up.   It stated two purposes, one of which was to stay the
collection of the purchase money and the other to have the title
to the land settled and quieted.   In the first, only the plaintiffs
and the defendant Rawson and his trustee were interested, but
in the other, Holt and Mathews were interested, for the bill,
after alleging that they claimed the land, prayed that "for the
effective removal of said cloud of title, the said Rawson, on the
one hand, and the said Holt and Mathews upon the other, may
be required to deduce their respective titles to said land, and
settle their respective claims."   The bill clearly set out and
showed that if Rawson should be permitted to collect his pur-
chase money before it was judicially or otherwise settled and
fixed that the Holt and Mathews claim was not superior to that
of plaintiffs, the complainants would suffer, or be exposed to,
irreparable injury.   It was a call to Holt and Mathews, based
upon a clear and well defined equity, not against them, but
against Rawson, to come forward and assert their claim.   If
it was such as bound them to do so and they failed, then, upon
the principle of *res judicata,* they are barred from ever assert-
ing it in any court.   While the bill did not show with sufficient
certainty, perhaps, that Holt and Mathews claimed the land
and that the title was defective, they could have disclosed it by
an answer and had the whole matter settled there, or, upon ob-
jection to the jurisdiction of the court, in a court of law and
the sale would have been prevented by an injunction pending
its settlement.   This would have enabled the plaintiff to have

saved either its money or the land. But they refused to disclose their title in that suit. Rawson came in and produced his patent and introduced testimony showing all the elements of a good title and the court dismissed the bill and allowed him to colect the money, a thing it could not, and would not, have done, without violating the rules and principles of equity, had Holt and Mathews answered the bill, or had the bill and proofs shown defect of title. *Wamsley* v. *Stalnaker,* 24 W. Va. 264; *Lovell* v. *Chilton,* 2 W. Va. 410; *Kimports* v. *Rawson,* 29 W. Va. 487; *Heavener* v. *Morgan,* 30 W. Va. 335. But they stood upon their conclusion that they had not been impleaded, they ignored the process of the court and the bill filed against them, they say neither the plaintiffs nor Rawson could plead for them, and they contend that there could have been no decree against them because there were no pleadings in the cause upon which such decree could have been based. It is also urged that, as there can be no decree between co-defendants without pleadings between them, and, upon such pleadings there must be process, no' decree could have been pronounced against Holt and Mathews. Neither of these positions are tenable. The bill itself was against Holt and Mathews as claimants of the land, and prayed that their claim be removed as a cloud on the title of the plaintiffs. Rawson was not then the owner of the land and there was nothing to settle directly between him and Holt and Mathews. The object of the bill was to declare that Holt and Mathews had no title, before the plaintiffs should be required to pay the money.

But treating it as a bill against Holt and Mathews, requiring them to answer, without regard to any pleading by Rawson, they did not plead to it, and if there be any decree against them by the final decisions of the case, it is a decree *pro confesso.* This necessitates an inquiry as to how far such a decree is conclusive in a collateral proceeding. "A judgment by default is conclusive of all that is properly alleged in the complaint, and nothing more." Herman on Est. & Res. Adj., p. 46, citing *Unfried* v. *Heberer,* 63 Ind. 67. If by "properly alleged" is meant that a bill or declaration will not support a judgment or decree in any case, unless it states a complete cause of action in every detail and is proof against a demurrer, this proposition is clearly at variance with the principles of our jurisprudence. If it were true, all the reasons for holding a merely erroneous judg-

ment unimpeachable in a collateral proceeding would fail. Moreover, it is not supported by the better authorities. See *Thompson* v. *Wooster,* 114 U. S. 104, 111; *Heffner* v. *N. W. L. Ins. Co.,* 123 U. S. 747. Another rule of pleading which is so well known that it requires no citation of authority is, that less certainty is required in pleading a matter, knowledge of which lies peculiarly with the defendant, than when it is not peculiarly within his knowledge. What did Kinports and the St. Lawrence Company know of the particulars of the claim of Holt and Mathews? They must be taken to have set out in their bill all they knew about it. They said the defendants claimed under an "older grant" and then aver that they do not know whether "said title of Holt and Mathews is a valid one," and that their claim is a serious cloud on the title of complainants. It is virtually an averment that they have set out in their bill all they know about the Holt and Mathews claim, and then they are expressly and specifically called upon in the bill to set up their title. That a decree upon an imperfect bill taken for confessed under the laws of this State is not void is a fair inference from the statute providing for the correction of error in such decrees by motion. See section 5 of chapter 134 of the Code.

Having concluded that the court could have decided that Holt and Mathews had no title to the land, it remains now to ascertain whether it did so decide. On this question, the opinion and supplemental opinion, delivered by Judge Lucas and found in 36 W. Va. 237, and which are so extensively discussed in the briefs, both plaintiffs and defendants putting their respective constructions upon them and claiming they fully support their respective positions, are only entitled to consideration here by reason of the fact that they are the opinions of the learned judges who decided the second *Kinports-Holt and Mathews Case,* and that they are well considered and prepared. They are not decisive of the question. That case is not a part of this record, and as there is so much contention about the real meaning and import of the views there expressed, no time will be consumed here in an endeavor to ascertain how far they deemed the former suit in equity to have affected the rights of Holt and Mathews. Where the decree of a court is not ambiguous, it speaks for itself. When it is ambiguous, the accompanying opinion may be examined in order to determine

what has been adjudged. Herman on Est. & Res. Jud., p. 470, s. 402. As has been shown, it is always proper to consider the pleadings. The final decree in question here is not wholly free from ambiguity. It dismisses the bill at the costs of the complainants, and as our statute provides that costs shall be decreed to the party substantially prevailing, it is insisted that the decision was adverse to the plaintiffs and in favor of the defendants, including Holt and Mathews. On the other hand, it is urged that as the decree dismissed the bill and permitted sale of the land, it must have been decided that Holt and Mathews had no title for it would have been inequitable to have permitted the sale if the title of the plaintiffs was defective. By reference to the opinion it is found that the court considered both the pleadings and the evidence. In the course of the opinion, the learned judge who delivered it, said: "John W. Harris testified to the substance of the bill, *if it can be said to have any substance,*" indicating insufficiency of the bill. Again it is said, "The bill, it seems to me, does not show a proper cause. * * * If it had appeared, that a *bona fide* suit had been brought against Rawson's vendee to establish what was really believed to be a valid claim of superior title, and the court could see from the exhibition of such title, that there was indeed doubt about the title, or if under such circumstances a suit of such a character was threatened, then there would be grounds to enjoin the payment of the purchase money. * * * If there is a *bona fide* claim set up which is exhibited, so that the court can see it, and on such claim a suit is brought or threatened, that is sufficient; or, if no such suit is brought or threatened, and yet the plaintiff can show clearly to the court, that the title of his vendor is defective, he is entitled to the protection of the court by injunction." Upon these and other similar views expressed in the opinion, plaintiffs in error earnestly contend that the court found and decided nothing other than that the bill was insufficient and without substance or equity and dismissed it for that reason alone. Counsel for defendant in error point to the fact that the opinion reviews all the evidence as well as discusses the bill, saying in one place, "The proof is far below the allegations of the bill;" and, in another, after quoting from the decree of the court below, holding that the title had not been shown to be clearly defective and no suits to recover the lands of the plaintiffs had been brought or

threatened, "This is true. The judge found correctly," and concludes by saying: "It is true, equity will require a real cloud to be removed from the title to the land before it will suffer the land to be sold under a trust; but it must be such a cloud as reasonably and necessarily results in injury to the debtor, unless it be removed. *But here is no cloud."* The evidence showed what appeared to be a good paper title under which Rawson conveyed to Kinports, and actual possession under it until sale made to Kinports, and the court found that there was no evidence of any claim of title on the part of Holt and Mathews.

As the court was careful to sift the evidence as well as examine the bill, it must be presumed that had it shown any defect of title the bill would not have been dismissed, and the court would have given the purchaser the protection it frankly acknowledged he would have been entitled to had the defect appeared. In such case, an amendment would have cured the defects in the bill. The court must be credited also with the knowledge that unqualified dismissal of the bill would forever bar the plaintiffs from again asserting any claim or equity against Rawson or Holt and Mathews, on account of the matters set up in the bill, in any court. The learned judge who delivered the opinion and those who concurred in it, must be deemed to have proceeded with due care and deliberation in disposing of the case as well as with the knowledge of the consequences of a simple dismissal. To say they thus turned away plaintiffs, who had alleged all they knew about the adverse claim which endangered them and produced all the evidence of it that it was within their power to furnish, and compelled them to pay the purchase money, without intending at the same time to forever bind Holt and Mathews from taking the land away from them, is to impute to them the doing, intentionally or inadvertently, of a thing that does not comport with the principles of equity. The court must have intended all the decree effected. It compelled plaintiffs to pay the money and barred them from ever asserting any further claim against any of the defendants, in respect to the subject matter of the bill. That could not have been done consistently without deciding that Holt and Mathews had no title and binding them likewise from ever asserting the claim of title which they were alleged to have set up. But it is said that, had the court done that, it would have

decreed costs against the defendants. Not necessarily. The court found that no claim had been made by Holt and Mathews. Why then, should they have been punished with costs? But in reply to this it is said, the court would have so decreed only upon a disclaimer, filed in the cause. However that may be, it is manifest that the decree took from plaintiffs their money without assuring to them the land, after they had done all in their power to claim its protection, if it did not bar Holt and Mathews from asserting claim to it, and that many times outweighs the slight inference to be drawn from the adjudication of costs against plaintiffs. The conclusion, therefore, is, the record of said first chancery cause and the decision of this Court therein were properly admitted in the trial of this case and the jury properly instructed thereon to find for the plaintiffs.

The principles leading to this conclusion are clearly enunciated by the Supreme Court of the United States in *Hefner* v. *Northwestern Life Insurance Co.*, 123 U. S. 747, from the syllabus of which the following is taken: "A bill in equity by A against B and C to foreclose a mortgage from B to A alleged that C claimed some interest in the premises, the exact nature of which the plaintiff was unable to set out, and prayed for a decree of foreclosure, and that the right, title and interest of each defendant be forever barred and foreclosed, and for a sale of the premises, and for further relief. In the decree C's default was recited and confirmed, and it was adjudged that the mortgage was a lien prior and paramount to the lien of each defendant, and that the right, title and equity of redemption of each defendant be by a sale under the decree forever barred and foreclosed, and that the purchaser at such sale should take the premises by title absolute, relating back to the date of the mortgage. Under that decree the land was sold to A. *Held,* that the decree was a conclusive adjudication that C had no valid title or lien, and estopped him to set up, in defense to an action of ejectment by A, a tax title subsequent to the mortgage and prior to the suit for foreclosure."

While in *Kimports* v. *Rawson et als.* the Court did not decree a foreclosure of a mortgage, what it did do was tantamount thereto. It dissolved the injunction and permitted the trustee to sell. No decree of foreclosure was necessary to the collection of the money. Sale by the trustee was its equivalent. The deed of trust conferred the power of sale and the trustee was

proceeding to execute it when he was enjoined from so doing, on account of defect of title to the land. Dissolution of the injunction operated to produce the sale as effectually as a decree of sale would have done. As all effort to find any defect had failed, the court virtually ordered a sale of the land, thereby holding, as in the *Hefner-Ins. Co. Case,* that there was no valid, outstanding, adverse title. The silence of Holt and Mathews, after having been impleaded in the cause in respect to their claim operated as a confession of that fact, just as did the silence of Callahan in the other case. In neither case would the sale have been made had the defendants, adverse claimants, set up their titles in the suits. By silence they submitted to the jurisdiction of the court, and waived their claims or confessed they had done. Hence, they can rightfully blame nobody but themselves.

*Hefner* v. *Ins. Co.,* being exactly in point, and the principle involved being of such vast importance, it is deemed advisable to quote extensively from the unanimous opinion of the court delivered by Mr. Justice Gray: "Multifariousness as to subjects or parties, within the jurisdiction of a court of equity, cannot be taken advantage of by a defendant, except by demurrer, plea or answer to the bill, although the court in its discretion may take the objection at the hearing, or on appeal, and order the bill to be amended or dismissed. *Oliver* v. *Piatt,* 3 How. 333, 412; *Nelson* v. *Hill,* 5 How. 127, 132. A *fortiori,* it does not render a decree void, so that it can be treated as a nullity in a collateral action.   *   *   *   *   *   *   *
Upon that ground, it has been held by this Court, as well as by the courts of New York, California and Michigan, on appeals from decrees for foreclosure of mortgages, that the holders of a prior adverse title were not proper parties; and judges have sometimes used such strong expressions as that the mortgagee 'cannot make them parties,' or that their title 'cannot be litigated,' in a suit for foreclosure. *Dial* v. *Reynolds,* 96 U. S. 340; *Peters* v. *Bowman,* 98 U. S. 56, 60; *Eagle Ins. Co.* v. *Lent,* 1 Edw. Ch. 301, and 6 Paige, 635; *Banks* v. *Walker,* 2 Sandf. Ch. 344, and 3 Barb. Ch. 438; *Corning* v. *Smith,* 6 N. Y. 82; *San Francisco* v. *Lawton,* 18 Calif. 465; *Summers* v. *Brumley,* 28 Mich. 125.   *   *   *   *   *   *   *   *
But in none of the cases just cited was any question presented or adjudged of the effect that a decree of foreclosure,

rendered in a suit in which adverse claimants were made parties and their claims were directly put in issue and determined, might have against them in a subsequent action.  \* \* \* \* \*
There would ·seem to be no less reason for making Callanan a party to the bill than if he had claimed under a conveyance from or judgment against the mortgagor or the mortgagee since the date of the mortgage. But if Callanan was not a necessary party to the bill to foreclose the mortgage, clearly the mortgagor, if not the mortgagee, might have filed a bill in equity against him to redeem the land from the tax sale, alleging that he had a lien only and not an absolute title; and by such a bill the issue whether he had or had not such a title would have been directly presented. The question whether that issue should be determined in the suit to foreclose the mortgage, or in a separate suit, was a question of multifariousness or of convenience, affecting the discretion only, and not the jurisdiction, of the court. By determining, before finally decreeing a foreclosure and sale, the question whether Callanan had a good title under the tax deed, the probability of obtaining a fair price at a sale under the decree of foreclosure would be increased, the rights of all the parties secured, and further litigation avoided. As was said by Lord Chancellor Talbot, and repeated by Chief Justice Marshall, 'The court of equity in all cases delights to do complete justice, and not by halves.' *Knight* v. *Knight,* 3 P. Wms. 331, 334; *Corbet* v. *Johnson,* 1 Brock 77, 81.  \*    \*    \*    \*    \*    \*    \*    \*
In the absence of any statute or rule of court, restricting · the natural meaning of the words, the allegation in the bill to foreclose, that Callanan 'claims some interest in and to a portion of the mortgaged premises, the exact nature of which your orator is unable to set out,' was sufficient to include Callanan's interest, whether it was a mere lien for the amount of the taxes, as it would have been if the right of redemption from the sale for taxes had not expired, or if the treasurer's deed was void for any reason, or was a perfect title in fee, as it would be if ·that right had expired and there was no defect in the tax deed. The prayer of the bill was, not only for a subpœna and a decree of foreclosure against all the defendants named in the bill, but also that the right, title and interest of each and every of them be forever barred and foreclosed by the decree, and ·that a sale of the premises be made by a master, and for further relief.  \* \*

\* Callanan, by the service of the subpœna, had due notice of the allegations and prayer of the bill. By the decree reciting and confirming his default, the bill was taken for confessed against him; and any final decree, warranted by the allegations of the bill, bound him to the same extent as if he had appeared in the suit, and demurred to or contested those allegations. *Thomson* v. *Wooster,* 114 U. S. 104, 111."

For the forgoing reasons the judgment is affirmed.

*Affirmed.*