Burks, J.,
delivered the opinion of the court.
This case, among other matters, involves the construction of the will of Christian Ruleman, deceased. It would seem that the will was not written by the testator. This is to be inferred from the fact, that his signature thereto was written by some other person, and that he adopted it by making'his mark. It was attested and proved, by three subscribing witnesses. The scrivener, whoever he was, must have been quite illiterate. The instrument is very awkwardly and inartificially drawn. Whatever obscurity and ambiguity there may be about it, however, one thing seems clear: that it was the intention of the testator, in the disposition of his property, to observe the principle of equality. He had seven children—four sons and three daughters. After giving to his wife certain personal property absolutely, and two slaves, Simon and Patsey, during her life, and providing further that she should have her support out of the home place, he then devises lands to his daughter Helena, and his four sons, to each of them a separate parcel described by general metes and bounds, giving also to his son Christian a negro boy William, and at his wife’s death the slave Simon to his son Conrad, and the slave Patsey to his daughter Helena. To each of the devises to his sons he annexes a charge thus: * * * “Also out of his portion of the land Jacob pays three hundred dollars in five years after .my death.” * * * “ Also Christian out of his portion is to pay three hundred dollars towards towards paying my debts to be paid in five years after my death.” * * * “Henry Ruleman, my son, I will and bequeath to you one-half of my land lying on the Bull Paster river by pay— one thousand dollars towards my debts, the money, the half of the money must be paid in two years from this date, the balance 500 to be paid in *219 five years after my death.” * * * “ Conrad Ruleman, my son, I will and bequeath that you must pay $100 after my death towards paying my debts.”
Then follows this clause, “ After my debts are all paid my daughters, Phebe and Sophia, and eaqual portion with ihe balance, them and their heirs. A liso I will to my beloved wife one hundred dollars out of the Bull Pasture farm if not redeamed and soul.” In the next (concluding) clause, he appoints Jacob and Conrad executors of the will.
It appears that the testator died possessed of other personal property besides that bequeathed to his wife; but of what description it was and what its precise value is not shown. It does not appear, nor has it been suggested in argument, that he owned any real estate except that mentioned in the will. This he devised in parcels to his four sons and his daughter Helena, as before stated, except the one moiety of the Bull Pasture farm, as to which he died intestate, unless it was devised by implication to his daughters, Phebe and Sophia. The whole of the Bull Pasture farm was under a deed of trust to secure the payment of a debt of the testator to General Boggs. It is not shown what was the amount of this debt, or of the other debts of the testator, but it appears that one-half of the Bull Pasture farm was sold by the executor or suffered by him to be sold to satisfy the Boggs debt. The executor states that it was sold at the price of $2,800, and that the proceeds of sale and the personal property of the testator were consumed in the payment of the debts of the testator, leaving a deficiency of $15.00, which was paid by the executor out of his own means.
It seems to us, that construing the will in the light of the surrounding circumstances, so far as we have them, it was the intention of the testator to provide for his daughters, Phebe and Sophia, portions which, in his opinion, would be equal to those given to his other children. This *220 °^jeo^ sollgfil; 1° effect by the charges aforesaid on the lands devised to his sons. These charges together amount the sum of $1,700. We do not know what was the value of the property devised aud bequeathed to the several children. There is nothing in the record that enables us fix the value, nor do we know what was the estimate of the testator, except that he must have considered and determined in his own _mind that the sum raised in the manner prescribed would secure the desired equality.
In the view we take, it matters but little whether the-testator intended, as he probably did, that the seventeen hundred dollars should be applied to the payment of his debts, including the debt due Boggs, and that the property—a moiety of the Bull Pasture farm and the personal property—not specifically devised and bequeathed, so far as it was not needed for debts, should go to his two daughters, Phebe and Sophia, or be applied for their benefit, or whether his intention was, as the learned counsel for the appellees contends, to raise by the charges a fund for the payment of the legacies to the daughters as well as the debts. The result in either case would be the same. If the former construction prevail, then the fund— the personal property and a moiety of the Bull Pasture farm—having been taken to pay debts, which the charges against the devisees were intended to pay, the two daughters being thus disappointed will be turned over for reimbursement to the charges against said devisees. If the latter construction be the correct one, the daughters, of course, are entitled to whatever remains of the fund after the payment of debts, and as the debts are all paid, they are entitled to the aggregate amount chargeable by the testator against the lands devised.
One or the other of these constructions must, we think, be correct. Practically, in this case, it makes no difference which shall be adopted.
The learned counsel for the appellant insists that the *221 charges against the lands devised were made merely to Pay the debts, and that the debts having been paid by the executor out of the property of the testator, the therefore, cease. We cannot yield our assent to this proposition, for the reasons already stated. We do not think that these charges were in any sense contingent. They are, in our opinion, absolute in their nature, and constitute an unconditional testamentary provision, made by the father for his two daughters.
The court is therefore of opinion that the appellee, Henry Ruleman, took the land devised to him by the sixth clause of the testator’s will, subject to a charge thereon of $1,000 for the benefit of the testator’s two daughters, Phebe and Sophia, and that Harvey M. Jordan, who purchased said land from the said Henry Ruleman, and the appellant Jonathan Siron, who purchased the same from the said Jordan, having had, severally, notice of said charge at the dates of their respective purchases, each of them acquired the said land subject to the charge thereon of so much of the said sum of $1,000 as remained unpaid at the date of his purchase.
The court is further of opinion that it was competent for the said executor, and it was his duty to collect the said sum of money from the said Henry Ruleman, and dispose of the same according to the provisions of the testator’s will, as hereinbefore construed; and to that end, it was competent for him to file his bill against said Henry Ruleman and his alienees, to enforce the charge against said land in default of the payment of said money, in whole or in part.
The court is further of opinion that the said Henry Ruleman, in part satisfaction of the charge against said land, paid to the said executor, on the 2d day of April, 1860, $72.24, and on the 1st day of September, 1860, the further sum of $225.96, leaving a balance due the executor, on the 2d day of November, 1863, as agreed by the *222 parties, of $722.50; and this balance was paid to the executor by the appellant on the day last named, partly in Confederate States treasury notes and partly in the notes of state banks, then greatly depreciated, and that the said notes were thus paid to and received by the executor upon the agreement and understanding between him and the appellant that if the legatees entitled should refuse to accept said notes when tendered in payment of their legacies, the same should be returned by the executor to the appellant.
The court is further of opinion that it was the duty of the said executor, as soon as he received the said notes under the agreement and understanding aforesaid, to apply to said legatees and ascertain from them whether they would accept the said notes, and if they refused to receive them, he should have returned them to the appellant; and inasmuch as the said notes were never so returned, although they may have been rejected by said legatees, if and when tendered, and whether they perished on the hands of the executor or were converted to his own use, in either case he became liable to the appellant for their value as of the date at which he received them or a reasonable time thereafter, and in any decree which should have been rendered against the appellant, the latter should have been credited with such value'when ascertained.
But the court is further of opinion, that it ivas improper to render any decree fixing definitely the amount for which the appellant is liable to account until further proceedings were had in the cause. From the documentary evidence in the record, it appears that Phebe and Sophia, the two daughters of the testator, in conjunction with their husbands, instituted a suit in equity in the circuit court of Pendleton county, West Virginia, against the executor aforesaid, and the other devisees and legatees under the testator’s will, the object of which suit was to enforce the collection of the legacies claimed by the com *223 plainants. The record does not show when this suit was commenced. Jacob Ruleman, the executor, filed his answer to the bill. It seems to have been sworn to on 8th day of April, 1867, and was probably filed about that time. The cause was pending until the 13th day of April, 1872, when a final order was entered therein in these words: “ This suit is dismissed agreed.” There is nothing to show the nature of the agreement beyond what the order imports. It at least implies an adjustment of some sort. Hoover v. Mitchell & others, 25 Gratt. 387. It may be, that some arrangement has been entered into by which all matters in controversy between the parties have been settled so as to relieve the charge which rests on the appellant’s land, or the executor may have satisfied the claims of the complainants, and the present suit, while prosecuted nominally in his character of executor, may be really for his own benefit. If the latter suggestion should be well founded, the question would be presented whether the executor would be allowed to recover more than he has paid out. See Burton v. Slaughter, 26 Gratt. 914. It is worthy of notice, that the bill in this case was not filed until after the lapse of nearly twelve years from the date of the payment of the Confederate money and bank notes in 1863, and more than twelve months after the dismissal of the suit in "West Virginia already referred to. In the answer of the executor in the last named suit, it is stated that the complainant Sophia resides in one of the western states, and that the complainant Phebe resides in West Virginia and is deranged. Under these circumstances, we think, that before any decree should have been rendered subjecting the lands of the appellant, the nature, extent and effect of any adjustment of rights and claims which may have been entered into between the executor and the devisees and legatees should have been inquired into, and that Phebe and Sophia, the two daughters of the testator, should have been made parties to the cause.
*224 The court is therefore of opinion, that the decree appealed from should be reversed, and the cause remanded the circuit court, with directions to require the complainant to amend his bill making additional parties, and for further proceedings in conformity with the views hereiubefore expressed, in order to a final decree,
Moncure, P., dissented.
The decree was as follows:
This day came again the parties, by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in a written opinion filed with the record, that the said decree is erroneous. Therefore it is decreed and ordered that the said decree be reversed and annulled, and that the appellant recover against the appellee, Jacob Puleman, executor of Christian Puleman, deceased, his costs by him expended in the prosecution of his appeal aforesaid here, to be levied of the goods and chattels of his testator in his hands to be administered. And this cause is remanded to the said circuit court, with directions that the complainant be required to amend his bill making additional parties, and for further proceedings, in conformity with the written opinion aforesaid, in order to a final decree.
Which is ordered to be certified to the said circuit court of Highland county.
Decree reversed.