# 𝔚ytheville.

## WOHLFORD v. COMPTON.

August 14, 1884.

1. RES JUDICATA—*Dismissed Agreed.*—The judgment of a court of competent jurisdiction, dismissing a suit agreed, on the ground that it has been agreed by the parties, is a final determination of the matters which were actually, or might have been, litigated in that suit as against said parties and all claiming under them. *Hoover* v. *Mitchell*, 25 Gratt. 387 ; *Wilcher* v. *Robertson*, 78 Va. 602.

2. IDEM—*Idem—Administrator.*—Where a party dies *pendente lite*, the suit may be compromised by his administrator, and a judgment entered dismissing the suit agreed, without there having been any revival thereof, is, unless reversed on appeal, final and a bar to further prosecution of that or any other suit for the same purpose.

Appeal from decree of circuit court of Bland county, entered May 1st, 1882, in two chancery causes consolidated and heard together, in one whereof John R. Compton was original plaintiff, and in the other Joseph Wohlford was original plaintiff, and Samuel C. Williams, administrator, and Pamela Williams, widow, and Martha, John, and Rush Williams, infant children of John Williams, deceased, were cross-plaintiffs.

In October, 1878, said Joseph Wohlford brought a creditors suit against the estate of said John Williams, deceased, to subject to the payment of his debt, an alleged indebtedness of said John R. Compton to the estate of said John Williams, which grew out of the joint ownership by said Williams and Compton of certain mill property in said county.

At the hearing the circuit court dismissed both the original bill of the said Wohlford and the cross-bill of Williams and others, with costs. And from the decree the said Wohlford and the said cross-plaintiffs obtained an apeal to this court. Opinion states the case.

*Joseph W. Caldwell, William N. Harman,* for the appellants.

*Samuel W. Williams,* for the appellees.

LACY, J., delivered the opinion of the court:

In 1863, one A. C. Hall purchased of one William Stuart the real estate in question at the price of $11,000. Of this purchase price $5,000 was paid by Hall in money, and a lien existing on the said property for the sum of $6,000, due to Dr. Painter, the vendor of Stuart. Hall assumed the payment of the said sum of $6,000, and gave his bond for the same. On the 13th of August, 1864, Hall sold this property to Williams & Compton for $600 in gold, and the said Williams & Compton undertaking to pay the $6,000 aforesaid, due on the property, and a lien was retained on one-half of the property to secure the payment of the said $6,000 to Stuart.

On the 25th of August, of the same year, Williams sold his one-half of the property to one Jezuel Robinett, upon the undertaking of Robinett to pay the said $6,000 to Stuart, with all accrued interest.

On the 18th of October, Stuart instituted proceedings to collect by foreign attachment against Hall, who had become a nonresident, the year's interest due by Hall March, 1864, garnisheed $184 in the hands of Compton due to Hall, and Robinett and Compton gave their notes to Stuart for the residue of the interest due and to become due for this and the next year, and Stuart assigned to them an equal amount of the debt due to him by Hall.

On the 25th of March, 1865, Jezuel Robinett having died, his administrator, James Robinett, settled with Stuart by paying him accrued interest on the $6,000, and gave up the claim of Jezuel Robinett to the one-half of the property, and Stuart gave Hall's bond for $6,000 to James Robinett, and Robinett gave up Hall's bond to Mrs. Hall and took in the obligation of Compton & Williams to Hall. So that Stuart became again the owner of one-half of the property, and Compton of the other half.

In May, 1870, the widow and children of Jezuel Robinett, deceased, instituted their suit against Williams, Compton and Stuart, to rescind the transactions of Jezuel Robinett in the sale to Stuart of his interest in the property. In September, 1872, this suit was dismissed upon the hearing.

In May, 1871, John Williams, above mentioned, brought his suit against Compton for the amounts alleged to have been paid by Williams in the purchase of the property with Compton over and above his due share of their obligation. Compton answered, setting forth that Williams had bought one-half of this property for $6,000, which he had never paid, and one-half was bought by him, Compton, for $600 in gold, which he had paid, and denying that there had been a joint purchase by them, and that Williams had any claim against him for contribution.

On the bill and answer an account was decreed. Before it was executed Williams died. In 1874, at the May term, Samuel C. Williams having qualified on the estate of John Williams, the controversy was compromised upon the payment of $100 by the defendant, Compton, or rather upon the execution of his note for $100 by Compton, which was assigned by said Samuel C. Williams to the appellant, Wohlford, who was his creditor on account of the estate of John Williams, and the note was paid by Compton to Wohlford, and the suit dismissed agreed.

At the May rules, 1873, James Robinett instituted his suit as administrator of Jezuel Robinett against Compton, Williams,

Stuart and Painter, for contribution from Compton for over pay-
ment on his proper share of the purchase of this property.
Compton answered, denying any over payments, and an in-
debtedness on his part.

At the May term, 1876, the case was fully heard in the cir-
cuit court of Bland. It was decreed that the plaintiff had no
equity for a recovery against Compton on account of the trans-
actions in the bill stated, and this bill was dismissed with costs.

No appeal was ever taken in any of the cases above mentioned.

At the August term of the circuit court of Bland, 1877, in the
suit of *John W. Bruce* v. *John Williams' Adm'r & others*, there
was a decree in favor of the heirs of Lucinda Bruce for $550 against
Compton and Wohlford, as the sureties of John Williams, as
executor of James P. Holmes, deceased. Execution issued
against Compton and Wohlford; whereupon Compton instituted
a suit against his co-surety, the appellant, Wohlford, to compel
him to pay his share of the debt due the heirs of Lucinda Bruce,
out of certain moneys in the hands of the court. This suit by
Compton against Wohlford was instituted in June, 1878, and
an injunction was awarded them.

At October rules, 1878, this suit was instituted by Wohlford
for himself and all unsatisfied creditors of John Williams, for
the purposes already stated, to have contribution from Compton
on account of the property bought as alleged, by Williams and
Compton from Hall. In this suit the administrator of John
Williams, deceased, united.

These two suits of *Compton* v. *Wohlford*, and *Wohlford* v.
*Compton*, having been consolidated and heard together on the
first day of May, 1882, a decree was rendered, whereby the bill
of Wohlford against Compton was dismissed with costs. The
cross-bill of Williams and others against Compton was also dis-
missed with costs, and the two causes stricken from the docket.

In the case of Compton against Wohlford, it appearing to the
court that John R. Compton and Joseph Wohlford were jointly
bound as the sureties of John Williams, as executor of J. P.

Holmes, for the amount of the decree rendered in favor of John W. Bruce and Mary E. Bruce, and it appearing that Compton, as such surety, had fully paid off the amount of said decree for $550, with interest from December 17th, 1864, and costs, and that Compton was entitled to the substitution of the lien of the said decree, to the extent of one-half thereof, and to enforce the lien against the real and personal estate of his co-surety, the defendant, Joseph Wohlford, it was so decreed, and leave was given Compton to amend his bill.

From this decree Joseph Wohlford applied for and obtained an appeal to this court.

The appellee for his defence first sets up the decree of the circuit court in the case of *John Williams* v. *Compton*, rendered at the May term, 1874, which was never appealed from, and thus became final.   It will be remembered that that suit was instituted by John Williams in his life-time for the same purposes as are had in the suit of *Wohlford* v. *Compton ;* that is, to have contribution from Compton for over-payments by Williams on account of their joint property.

The suit by Wohlford is by an alleged creditor of Williams, seeking exactly the same end, claiming as a creditor of Williams, as against Compton, the same rights which Williams had, with whom have united Williams' widow and children.

The appellant seeks to avoid the effect of the dismission of the suit of *Williams* v. *Compton*, upon the ground of its being a consent or compromise decree, and that the suit had not been revived in the name of the administrator ; that being an agreed dismissal, it is not a bar to another suit having the same object against the same party ; and the suit not having been revived in the name of the administrator, he is not bound by it.

Upon this question this court said, in the suit of *Hoover* v. *Mitchell*, 25 Gratt. 389, decided at the September term, 1874, Anderson, J., delivering the opinion: " The court is of opinion that the judgment of a court of competent jurisdiction, dis-

missing a suit agreed, upon the ground that it had been agreed by the parties, is a final determination as to those parties of the matters litigated in that suit. It is virtually an acknowledgment by the plaintiff in open court, as in *retraxit*, that the plaintiff has no cause of action, or rather no further cause of action. It is not merely an abandonment of his suit by the plaintiff, as in a non-suit; it is the concurrent action of both parties.          *        *        *        *        *        *
An agreement to compound civil rights, or forego or settle an action that has been commenced, is valid, and may be enforced." Citing Addison on Contracts, p. 96, sec. 2.

The learned judge proceeding, said: "It should be an end of the controversy, and may be pleaded in bar of a subsequent suit for the same cause of action. The prevention of litigation is a valid and sufficient consideration; for the law favors the settlement of disputes."

In this case, as we have seen, the dismissal was not merely to put an end to litigation, to save costs and the like, but it was dismissal upon the payment of a certain sum of money agreed on by the parties in satisfaction of the claim of the plaintiff against the defendant.

Judge Tucker says: "A *retraxit* differs from a non-suit in that, one is negative and the other positive. The non-suit is a mere default and neglect of the plaintiff, and, therefore, he is allowed to begin his suit again upon the payment of costs; but a *retraxit* is an open and voluntary renunciation of his suit in court, and by this he forever loses his action." Tuck. Com. 2 Vol. 251.

When a court of competent jurisdiction has given judgment, that the defendant go without day, and that judgment remains unreversed, it is taken to have been rightly given, and the plaintiff cannot have a second action for the same cause. Rob. New Prac. Vol. 7, 181.

When a matter is adjudicated and finally determined by a

competent tribunal, it is considered as forever at rest. This is a principle upon which the repose of society materially depends, and it therefore prevails, with very few exceptions, throughout the civilized world. This principle embraces not only what was actually determined, but also extends to every other matter which the parties might have litigated in the suit. Well's Res Adjudicata, 220.

In the case of *Siron* v. *Ruleman*, 32 Gratt. 223, Judge Burks delivering the opinion of the court, said : "A final order was entered in the cause in these words: 'This suit is dismissed agreed.' There is nothing to show the nature of the agreement beyond what the order imports. It at least implies an adjustment of some sort." Citing *Hoover* v. *Mitchell, supra.*

In this case we are not left to conjecture as to what the nature of the agreement was. It is admitted to be upon the payment of the sum of one hundred dollars by the defendant to the plaintiff, in full satisfaction of the claim of the plaintiff, and is as binding on him as if the decree had been for the payment of the whole amount claimed, and it had been paid by the defendant.

The claim that the plaintiff was not bound by this decree, because he had the cause dismissed, or accepted settlement of the debt by the defendant without having the death of his intestate suggested, is neither sound nor reasonable. The administrator was competent to compromise and settle the controversy. He could have had the death of his intestate suggested. There was no obligation upon the defendant to do this. If he, the plaintiff, intended to further prosecute the suit, it was necessary to do this in order to bring him before the court for that purpose. But if the debt had been paid and the cause of action had ceased to exist, it was not necessary to take this or any other step toward the further prosecution of the suit. And neither he nor those claiming under him, can complain that this was not done. The final order in the case having been entered, and not appealed from, it is final, and is a bar to any further prosecution

of the suit, either by the plaintiff or any person claiming under him, or by virtue of his. right.

In the view we have taken of this question, it is not necessary to decide any other question in the cause, and it follows that the decree complained of and appealed from here must be affirmed.

And we are of opinion that there is no error in the decree appealed from, and the same must be affirmed.

DECREE AFFIRMED.