# CHARLESTON.

D. A. SIMMONS *et al.* v. JOSHUA YOHO & WYLIE HUGGINS.

Submitted January 16, 1923.   Decided January 30, 1923.

1. JUDGMENT—*Decree Beyond Pleadings Void.*

Where in a suit in equity it appears that the pleadings do not warrant a decree or part of a decree entered, and that the decree or such part of it is clearly and unmistakably beyond the scope of the pleadings, then the decree or such part of it is void, not merely erroneous.   (p. 715).

2. SAME—*Where Jurisdiction of Court is Erroneously Decided by it, Decree Entered Voidable Only.*

But a court has jurisdiction in a cause, where the parties are before it, to make a wrong decision as to its jurisdiction; and in such case, if it is questionable or debatable whether under the allegations in the pleadings the court has jurisdiction to enter the decree and it erroneously decides that it has, then the decree so entered is erroneous and voidable only, and is not void and open to collateral attack.   (p. 716).

3. APPEAL AND ERROR—*Circuit Court Decree Void for want of Jurisdiction May be Reversed or Vacated.*

A decree entered by a circuit court, though void for want of jurisdiction, may be reversed or vacated by this court on appeal.   (p. 716).

4. SAME—*While Appeal from a Void or Erroneous Decree Pending, it May be Dismissed Agreed by Consent of Parties.*

While an appeal from a decree, whether void or merely erroneous, is pending in this court, it may, by consent of the parties, be "dismissed agreed."   (p. 719).

5. SAME—*Order Dismissing Case Agreed Imports Compromise and Does Not Include Matters Not Involved on Appeal Nor Release Trial Court Decree.*

Such an abbreviated order entered by this court merely dismissing a case agreed imports compromise and adjustment as to all points of error that arise or which may properly arise on the face of the record, and in every case necessarily includes that of lack of jurisdiction in the trial court to enter the decree complained of; it releases all such errors, including that of lack of jurisdiction, but it does not include matters not involved here, nor release the decree entered by the trial court, but permits that to stand.   (p. 721).

6. COMPROMISE AND SETTLEMENT—*Void Decree May be Basis of Compromise and Adjustment.*

   A decree, though void, may be the basis of a compromise and adjustment of controversies between the parties thereto.   (p. 721).

7. APPEAL AND ERROR—*Agreement of Parties Dismissing Appeal Confirms Decree Below.*

   Where the parties were before the trial court and made objection there to the decree complained of here on their appeal, and later by consent of the parties their appeal in this court was dismissed agreed, they can not thereafter collaterally attack the decree entered below because it goes beyond the scope of the pleadings or because there is not sufficient pleading to support it.   Their agreement of record here confirms and ratifies the decree entered there.   (p. 721).

8. SAME—EVIDENCE—*One Introducing Documentary Evidence Cannot Complain that it is Improper.*

   The certificate of the clerk of a circuit court appended to a notice of judicial sale by a special commissioner to the effect that the special commissioner had given bond as required by the decree of sale is not proper proof that the special commissioner in fact gave such bond, but in a subsequent controversy respecting the title to the land sold pursuant to such notice, if the plaintiff introduces the notice and certificate as a part of his case he has no right to complain that the certificate is improper evidence.   (p. 721).

   (MCGINNIS, JUDGE, absent).

Error to Circuit Court, Marshall County.

Action by D. A. Simmons and another against Joshua Yoho and another.   From a judgment for plaintiffs, defendants bring error.

*Reversed, and judgment for defendants.*

*J. Howard Holt* and *Martin Brown,* for plaintiffs in error.

*J. W. McIntire, D. B. Evans,* and *McCamic & Clarke,* for defendants in error.

MEREDITH, JUDGE:

This is an action of ejectment brought by David Simmons and William S. Simmons, against Joshua Yoho and Wylie

Huggins for the recovery of the fee in 132 acres 155.4 poles of land in Marshall County, consisting of three parcels, which together make a single tract. The action was dismissed as to Wylie Huggins, he being a tenant, and pending the action, having moved off the farm. The case was submitted for trial to the court in lieu of a jury and resulted in a finding and judgment for plaintiffs. The court refused to set aside its finding and judgment. Joshua Yoho having died since the entry of the judgment, his heirs and devisees, on their petition, obtained a writ of error.

There are various assignments of error, but they may all be resolved into one—the finding of the court is contrary to the law and the evidence. That depends upon the validity of defendants' title, derived through a court proceeding which it is necessary to set out at length.

The record shows that in 1892 John Simmons, the father of plaintiffs, died seized of the lands in controversy. His will, probated June 13, 1892, disposed of his property as follows:

"I desire that my just debts be paid with all convenient speed and after my funeral expenses and all charges of proving and the probate of this my will shall have been fully discharged, I give devise and bequeath my estate and property as follows, to my wife Julia Ann Simmons, I give, bequeath and devise all my estate both personal and real that I may be in possession of, at the time of my death, during her natural life and I desire that my wife's sister, Mary Twinam shall have her living on my property during her natural life. At the decease of my said wife my will is that each one of my daughters, Sarah M. Miller the wife of Wm. Miller, Mary E. Miller the wife of Josephus Miller, Luticia Miller, the wife of Jasper Miller and Easter Bell Joliff, the wife of Elmus Joliff, shall share equal, each one shall have two hundred dollars, with that they have received.

I give unto my son Elias Simmons the sum of five dollars, he also having been provided for.

It is my will and I direct that all the residue of my estate real and personal wheresoever it may be found and of whatsoever it may consist, I give and devise unto my two sons, David Simmons and William S.

Simmons, to them and their heirs they two shall have equal.''

The two sons mentioned, David Simmons and William S. Simmons, are the plaintiffs in this action; Julia Ann Simmons was their step-mother.

Some time in 1895, the exact date not being disclosed, Julia Ann Simmons and Mary Twinam filed their bill in the circuit court of Marshall County, alleging in substance that Julia Ann Simmons is the widow of John Simmons, deceased, who died testate in 1892, seized of 136 acres of land in said county, and devised it to said widow during her lifetime, and also bequeathed to the plaintiff Mary Twinam a living out of said property during her life-time; a copy of the will is filed as an exhibit with the bill. The bill also alleges that under the terms of the will the plaintiffs went into possession, all the decedent's debts and funeral expenses and charges of administration being settled, and they so remained in possession until about July 22, 1892; that decedent in his life-time had made a lease, in writing, to the defendants D. A. Simmons and W. S. Simmons (who are plaintiffs in this present action) of the said land for a term of years, upon condition that they diligently farm the tillable parts of said farm and give said John Simmons one-third of the grain raised thereon, the corn to be delivered in season in the crib, small grain to be delivered in the granary, hay in the mow, straw in the stack, fodder in the shock, John Simmons to pay a third of the taxes and the defendants to pay two-thirds also, that John Simmons reserved possession of the mansion house and outbuildings, garden and truck patches, and pasture for one horse and three cows, and one-third of the fruit grown on the farm, the defendants to cut and haul firewood for John Simmons and his family; in consideration thereof defendants were to have the use of the farm; that some time after John Simmons's death, defendants requested Julia Ann Simmons to renew the lease, and prepared, presented and read to her what they represented to be an exact copy of the John Simmons lease, and which paper as read was in terms substantially a copy thereof; that the defendants signed it, and although she did not sign it, Julia Ann Simmons authorized her name

to be signed to it, but plaintiff Mary Twinam neither signed nor assented to it in any way; that defendants kept the original John Simmons lease as well as the lease between them and Julia Ann Simmons and did not give to plaintiffs or either of them a copy; that under the last lease the defendants took possession of the 136 acre farm; that Julia Ann Simmons can neither read nor write and she does not know whether the paper was falsely read to her, or whether a different paper was afterwards substituted for the one to which she gave her assent, but that the paper under which the defendants now claim omits many important provisions contained in the John Simmons lease and which were contained in the paper read to her and to which defendants agreed; that the paper under which they now claim is not the lease to which Julia Ann Simmons agreed; that they recently furnished her a copy of the purported lease, which she files with her bill as an exhibit, but she never assented thereto; that under it the defendants claim they are not bound to farm any of said land unless they so desire, but have been farming other lands adjoining in which plaintiffs have no interest, so that plaintiffs are left without means of support; that defendants claim they are in no wise bound to support Mary Twinam, because the lease does not require them to do so, and that whatever she gets, must come from Julia Ann Simmons; that defendants falsely represented to plaintiffs the amount of taxes due on the land and that they had paid them, and so have collected from Julia Ann Simmons far more than the one-third to be paid by her; that the land is a good farm and if tilled as agreed would furnish plaintiffs an ample support and give defendants a large profit, and unless it is so tilled plaintiffs are left without any means of support. Plaintiffs pray that the defendants may be required to answer; that the pretended lease may be set aside as fraudulent and that that they be required to produce the true contract made with John Simmons, and that the new lease may be reformed so as to conform to the John Simmons lease, and so as to carry out the contract made between defendants and Julia Ann Simmons, and that the new lease be so construed as to compel the defendants to farm at least a reasonable portion of the farm and furnish plaintiffs a proper support;

that plaintiffs may be put in possession of the 136 acres until the lease is produced and reformed; that the court ascertain the proper amount to be paid Mary Twinam, per annum, for her support, under the terms of the will and that said amount be made a rent charge upon the land and enforced; and that plaintiffs have general relief.

The lease exhibited is dated July 22, 1892, but is neither signed nor sealed. It purports to be a lease from Julia Ann Simmons to the defendants D. A. Simmons and W. S. Simmons, of the 136 acres, for her natural life, upon substantially the same terms as above stated, except it does not require the defendants to farm any part of the land. That is left optional with them. On June 29, 1895, the following order was entered in the cause:

"Julia A. Simmons and Mary Twinam
       vs.      In chancery.
D. A. Simmons, et al.

This cause came on this day to be heard upon the appearance and demurrer interposed by the defendants D. A. Simmons and W. S. Simmons by their counsel J. E. Hooten and was argued by counsel, whereupon the Court being of opinion that the said bill is demurrable because *on* the misjoinder of the plaintiffs Julia Simmons and Mary Twinam their interests being separate, but still both of said rights being cognizable in equity, it is agreed by the parties defendant and parties plaintiff, that the said Mary Twinam shall be changed from party plaintiff to party defendant which by permission of the Court is here done, and the said Mary Twinam asked leave to file her separate answer which is here *according* filed, and it is here agreed by all the parties hereto, that the rights of all the parties hereto shall be adjusted according to the rules of equity in this suit, that said suit and the depositions heretofore taken shall be preserved and held as of as much effect as if taken after this *amendment*, and that this suit shall be proceeded without further delay.

             J. E. Hooten for Defts.
             J. Howard Holt for
             Julia Simmons Plaintiff and
             Defendant Mary Twinam."

Mary Twinam's answer filed by that order is as follows:

"The separate answer of Mary Twinam to a bill in chancery exhibited vs. her and others by Julia Simmons in the Circuit Court of Marshall County, W. Va.

This respondent answering said bill or so much thereof as she is advised is material for her to answer says that in none of the matters relating to the contract of lease between Julia Simmons and D. A. and W. S. Simmons, has your respondent any interest. Respondent says that the allegation in said bill contained that respondent is entitled to a living out of the said property devised in exhibit one of the bill is true, and respondent is advised that the said living is a rent charge upon the lands in the said will devised by John Simmons. Respondent says that she is now an old woman past eighty years of age, utterly helpless so far as making or providing a living for herself is concerned; and that neither the defendants, D. A. Simmons nor W. S. Simmons, nor any other person is providing her with that living named in said will nor necessary to her condition. Respondent says that her sister Julia Simmons the plaintiff is not able to furnish her that living for reasons *detained* in the bill in this case, and that the defendants D. A. and W. S. Simmons refuse to furnish her that living for reasons *detained* in the bill in this case, and that the defendants D. A. and W. S. Simmons refuse to furnish this respondent that living. And that while respondent has managed to subsist through the kindness of friends thus far, that her living has been precarious and uncertain, wholly inadequate to the needs of a person of her age, and not such as was designated in the will of John Simmons she should have; and respondent declines to be a further charge upon her friends, and prays that the said land may be sold or rented for a sufficient sum (if possible) for a support for herself, after providing for any other charges on said land. This respondent is advised believes and alleges the fact to be that said land will not rent for a sufficient sum to attain this end, and if so found by this Court respondent prays that the said farm may be sold and the proceeds so far as necessary applied to the costs of sale and *respondents* costs and to her support and

maintenance. And *is* in duty bound respondent will ever pray.

Mary Twinam<br>
Per Counsel.''

It will be observed that the crossbill-answer does not in terms make the Simmonses parties thereto, nor pray for process against them, nor are they impleaded in the bill or crossbill-answer as to their remainder in fee in the land; their interest in the land, except as tenants of Julia Ann Simmons, is not mentioned. They appeared to the bill, but no formal appearance was made to the crossbill-answer.

On March 3, 1896, in the chancery cause styled ''Julia A. Simmons vs. D. A. Simmons et al.,'' a decree was entered reciting that:

> ''This cause came on to be heard further upon the papers formerly read, and the depositions of Julia A. Simmons, Mary Twinam, George W. Howard, James Blake, H. B. Mason, et al, taken on behalf of the plaintiffs, and the depositions of Z. M. Simmons, D. A. Simmons, A. N. Richmond et al., taken on behalf of the defendants, all of which depositions are this day filed in open court, and the court having read the testimony and heard the arguments of counsel, doth adjudge, order and decree that the contract of Julia A. Simmons and D. A. Simmons and W. S. Simmons, a copy of which is filed as exhibit No. 2 of the bill in this case, which contract is dated the 22nd day of July, 1892, shall be held good and effectual in all its terms and conditions, and all the parties thereto are bound by its terms and conditions.''

It is further decreed that the defendants D. A. Simmons and W. S. Simmons pay Mary Twinam $125 a year for her support during her natural life, commencing with the first payment decreed to be due December 31, 1895, for the year ending that day, and also pay the costs of suit; that there shall be a lien on the land of 136 acres leased by Julia Ann Simmons to D. A. Simmons and W. S. Simmons, and being the home farm of John Simmons, deceased, a life interest in which was devised by John Simmons to Julia A. Simmons with remainder over to D. A. Simmons, for the payment an-

nually when due of the $125 to Mary Twinam and for the payment of costs; the cause by the decree is retained on the docket to enforce the lien, should said sum and costs be not paid; the first payment and costs are decreed to be paid within thirty days from date of decree.

On November 6, 1896, an order was entered showing that Mary Twinam appeared by counsel and showed to the court that an execution for the $125 and costs decreed March 3, 1896, was returned unsatisfied, the defendants D. A. Simmons and W. S. Simmons filing exemptions of their personal property against levy; thereupon a special commissioner was appointed and directed to lease the land at an annual cash rental for the term of three years, beginning January 1, 1897. On April 14, 1897, an order was entered showing, upon the report of the special commissioner, that he was unable to obtain any offers to lease the land and that it would not in five years rent for a sufficient sum to pay the costs of suit and the annual rent charge of $125; thereupon the cause was referred to a commissioner to report (1) the debts of John Simmons, deceased, (2) the liens against said real estate and the liens against the life-estate of Julia A. Simmons, if any, and (3) whether the real estate will rent for a sufficient sum in five years to pay the liens thereon and costs of suit, and (4) what the rental and salable value of the land is. The decree directed the land to be surveyed by the county surveyor, and that the notice to lien-holders under section 7, chapter 139, Code, and notice to creditors of John Simmons, deceased, under section 8, chapter 86, Code, be given.

The commissioner's report was made, and filed July 10, 1897, showing (1) that there were no debts against John Simmons, deceased, (2) that there were "No liens against the real estate of the said John Simmons and W. S. Simmons, dec'd, nor the estate in remainder of D. A. Simmons and W. S. Simmons nor any against the life estate of Julia A. Simmons except the lien in favor of Mary Twinam as ascertained by this court in this case," and (3) that the rents "would not pay the liens on said land in five years." That same day, the surveyor's report of survey was filed, and a decree was entered, reciting that D. A. Simmons and W. S. Simmons were in default in the payment of the Mary Twinam rent

charge for the years 1895 and 1896, had failed to pay the costs as decreed, and that the lands would not rent for enough in five years to pay the lien and costs, and, directed that unless they pay said sums and costs in twenty days, all the right, title and interest of D. A. Simmons and W. S. Simmons in the land be sold by a special commissioner, who was appointed for that purpose. Pursuant to this decree their interest in the land was sold October 9, 1897, to Yoho and Mason for $1040; March 19, 1898, a petition was filed by M. A. Walton, accompanied by bond, offering an up-set bid. On April 6, 1898, the cause was further heard upon the papers theretofore read, the report of sale of the special commissioner; "upon the motion by the defendants to dismiss the cause with the affidavits in support of said motion and the counter affidavits opposed to said motion"; upon the petition of M. A. Walton for a re-sale; "And the parties, plaintiff and defendant as well as the purchaser having all had notice of these motions and appearing by counsel and the matters having all been argued by counsel and being maturely considered by the court," it is decreed that the sale heretofore made be set aside and the special commissioner is directed to re-sell the land in the original decree mentioned upon the terms therein prescribed.

On May 24, 1898, a decree was entered showing that the special commissioner, on May 7, 1898, sold the interest of D. A. Simmons and W. S. Simmons in the land mentioned to M. A. Walton for $1310, of which sum he paid one-third in cash, and executed his notes for the balance; that defendants D. A. Simmons and W. S. Simmons appeared by W. W. Arnett, their counsel, and filed six exceptions "to the confirmation" of the sale, "all of which was fully argued by counsel and duly considered by the court," but the sale was confirmed, to which action of the court the defendants D. A. Simmons and W. S. Simmons excepted. Among other objections to a confirmation of the sale, D. A. Simmons and W. S. Simmons say in effect that Mary Twinam was dead when the land was sold, and that she has no husband or children and no personal representative has been appointed for her; that the sale was not necessary and that Mary Twinam ought to have been allowed to dismiss the suit. An affidavit is filed

by the two Simmonses showing that Mary Twinam died before the sale was made. In that affidavit they designate themselves as defendants. There are various matters therein mentioned to which we need not refer. There were other affidavits made by the two Simmonses, which with exceptions to the first sale were filed at the October Term, 1897, objecting to any sale being made. Reference is made to them to emphasize the fact that they repeatedly appeared in the cause and made objection to a sale of the land or to the confirmation of any sale.

Defendants D. A. Simmons and W. S. Simmons obtained an appeal and supersedeas from this court from the decree of sale entered at the March Term, 1898, and this court on February 1, 1899, entered the following order:

> "Julia Simmons et als., Plaintiffs below, Appellees vs.
> D. A. Simmons et al., Defendants below, Appellants.
> Upon an appeal from and supersedeas to a decree of the circuit court of Marshall County pronounced at the March Term 1898. This day came the appellants by their attorney, W. W. Arnett, and upon his motion the appeal and supersedeas heretofore allowed in this cause is dismissed, which is ordered to be certified to the Circuit Court of Marshall County."

Evidently this dismissal was had because of failure to print the record, but it is not so stated. Immediately following the above entry, the order shows that the appellants D. A. Simmons and W. S. Simmons by W. W. Arnett, their attorney, presented to this court a petition praying for an appeal and supersedeas in the said cause, and which was allowed. On June 8, 1899, this court entered the following order:

> "Julia Simmons et als., Plaintiffs below, Appellees,
>       vs.
> D. A. Simmons, et als., Defendants below, Appellants.
> Upon an appeal from and supersedeas to a decree of the Circuit Court of Marshall County pronounced at the March Term, 1898.
> This day came the appellants by W. W. Arnett, their attorney, and the appellees by J. Howard Holt, their attorney, and by consent of parties by their said attor-

neys this cause is ordered to be dismissed from the docket of this court agreed: which is ordered to be certified to the Circuit Court of Marshall County.''

On June 15, 1899, the following order was entered in the cause by the circuit court:

"It appearing that their appeal to the Supreme Court of Appeals heretofore has been dismissed, and the purchaser M. A. Walton desiring to pay in full the balance of the purchase money of the land sold by J. Howard Holt, Special Commissioner, under order of said court, said Special Commissioner, J. Howard Holt, is here directed to receive the balance of said purchase money and to make the said M. A. Walton a deed for the said land. The purchase money above costs, to be retained by Comm. Holt until further proceedings herein.
Agreed order        W. W. Arnett, for Defendants
                    J. Howard Holt for Plaintiff.''

We find also that a petition was filed by Anna B. Simmons, wife of D. A. Simmons, and Rachel Simmons, wife of W. S. Simmons, stating that prior to Mary Twinam's death, she, Mary Twinam, for a valuable consideration, assigned her claim and decree against the land to the petitioners and that she owed no debts, and that the money from the sale of the land in the hands of the special commissioner belongs to them and they ask that it be decreed to them. The same attorney represented them who had represented their husbands, and their husbands verified their petition, on June 24, 1899. The record does not clearly show when the petition was filed; nor does it disclose whether the money was paid by the special commissioner to any one. The record stops at that point. The special commissioner by deed dated June 15, 1899, conveyed the land in fee (totally ignoring Julia Ann Simmon's life estate) to M. A. Walton. Sometime thereafter he took possession, certainly before 1904. What became of Julia Ann Simmons, whether she lived on the land or not, does not appear, but she lived until September 22, 1912. Walton conveyed the coal and mining rights by deed to J. V. Thompson,

December 16, 1901, and on November 5, 1904, conveyed to Joshua Yoho the lands in fee, excepting and reserving the coal and an interest in the oil and gas. Yoho immediately took possession and retained it till his death and his devisees presumably still hold possession. This action was brought in 1914.

We have recited at length the proceedings in the chancery suit, because plaintiffs claim that the decrees in that cause are void for want of jurisdiction; that the decree of sale being void, the deed to Walton is void, and likewise the deed to Yoho; that the life estate of Julia Ann Simmons did not expire till 1912, hence plaintiffs are not barred by the statute of limitations. The circuit court sustained their contention and gave them judgment.

We confess that we have had great difficulty in reaching a conclusion. The record in the chancery cause is unique. It is fortunate for litigants and those holding lands that it stands in a class by itself. There was hardly a step taken in it that was not erroneous, if not wholly void; scarcely a decree in it that did not contain reversible error. The land was sold at the suit of Mary Twinam, not at the suit of Julia Ann Simmons, the life-tenant; we do not think Mary Twinam had a particle of interest in the land nor any lien thereon by virtue of John Simmons's will, though we concede that to be a debatable question. The will gave Julia Ann Simmons a life-estate therein, and merely expressed a desire, following an absolute gift of the life-estate, that Mary Twinam should have a living on the land, but that question can not now be raised. The court determined that and its decree giving her a lien and the subsequent decrees of sale and confirmation can not now be questioned unless they are void for want of jurisdiction. Are they void? If so, then plaintiffs are entitled to judgment unless they are otherwise estopped; if not, but merely erroneous or voidable, then plaintiffs are not entitled to judgment.

Plaintiffs contend that the decree of sale was entered without pleadings to support it; that the court went beyond the pleadings, exceeded its jurisdiction. Now it is well established

that where there is no pleading to warrant a decree, or part of a decree, the decree or such part of it, is not merely voidable, but void, as it is not on a matter in issue. A court of equity, having jurisdiction for one purpose may go on and give complete relief as to all matters comprehended under the allegations of fact in the pleadings, but it is limited in its relief to the allegations of the pleadings and can not decree beyond their scope. *Waldron* v. *Harvey*, 54 W. Va. 608, 46 S. E. 603; *Simmons* v. *Simmons*, 85 W. Va. 25, 100 S. E. 743.

Now the bill on behalf of Julia Ann Simmons sought to reform a lease made to defendants; on behalf of Mary Twinam it averred that whatever she obtains, if anything, must come from Julia Ann Simmons, though it asks that the court ascertain the proper amount for her support and that it be made a rent charge upon the land and enforced. Nowhere in the bill is it alleged that the two sons have the remainder in fee in the land, nor is this interest in any way referred to therein. There is clearly nothing in the bill which would warrant a sale of the estate in remainder. The court, after determining that the bill was "demurrable" because the interests of the plaintiffs were separate, without sustaining the demurrer, by the consent of the parties, transferred Mary Twinam to the defendants' side of the cause, filed her answer, and in the same order it was agreed as evidenced by the record "by all the parties hereto, that the rights of all the parties hereto shall be adjudged according to the rules of equity in this suit, that said suit and the depositions heretofore taken shall be preserved and held of as much effect as if taken after this amendment, and this suit shall be proceeded (in) without delay." The answer, filed by that order, did not in terms make D. A. Simmons and W. S. Simmons parties to it, nor pray for process against them. But the agreement recited in the record, we think is sufficient to show an appearance to it. They were apprised of its allegations and agreed that it might be filed and the cause proceeded in without delay. But does it contain sufficient allegations on which to base a decree of sale of their interest in

remainder? That remainder is not mentioned. It nowhere appears that the two Simmonses own it, except as appears from the will exhibited with the bill and there is no allegation either in bill or answer to identify the two defendants as devisees of the remainder interest. Mary Twinam alleges that she is entitled to a living out of the land and that ''said living is a rent charge upon the lands ·in the said will devised by John Simmons''; that she is not interested in the controversy over the lease made by Julia Ann Simmons, but prays that the land may be, rented or sold and the proceeds applied to payment of costs and of her support and maintenance. Of course, a sale of the fee carried with it all the rights of the remaindermen. She did not even make any exception of the life-estate of her sister, but asked that the land be sold. But the prayer in her answer would not of itself give the court jurisdiction. It requires more than a mere prayer in a pleading to give a court of equity jurisdiction to grant the prayer. There must be some allegation of fact to warrant the relief. Now, stated in its most liberal terms, Mary Twinam's answer merely averred that she had a rent charge upon the land and was entitled to a living out of it, and on that allegation asked that the land be sold. Of course, a court of equity would have no jurisdiction to sell land for a mere rent charge; but the court, on the theory that she was entitled to a living out of the corpus of the estate, decreed that the land be rented, and failing in that, that it be sold for the benefit of Mary Twinam. The allegations of fact the answer, in our opinion, in no wise warranted the court in in decreeing a sale of the land in fee, or of the interest therein in remainder belonging to the two Simmonses, and the decree is clearly erroneous. But a court of equity has jurisdiction to make a wrong decision. It wrongfully decided that the ''living'' which Mary Twinam asserted against the land was a claim that might be decreed her out of the corpus of the estate, by decreeing a sale and giving her the net proceeds for her support. We say the court had jurisdiction to make a wrong decision as to its jurisdiction; this assumes, of course, that the defendants were before the court. ''An ad-

judication that a particular case is of equitable jurisdiction is not void, even if erroneous, and can not be disturbed by a collateral attack.'' *St. Lawrence Boom & Mfg. Co.* v. *Holt,* 51 W. Va. 352, 41 S. E. 351. Mary Twinam in effect did say that she was entitled to a living out of the land and that the land should be sold to provide that living.

Now did the court decide for itself whether it had jurisdiction, and if so, were the defendants then in court? They were before the court when the decree of March 3, 1896, was entered. The cause was heard upon depositions of the parties and was argued by their counsel; by that decree the court decided that Julia Ann Simmons was entitled to no relief, decreed that the two Simmonses pay $125 annually to Mary Twinam for her support and the costs, made that charge a lien on the land and retained the cause to enforce the decree. The depositions on which the cause was heard are not in the record, but we can rightfully assume that they established the amount of Mary Twinam's claim. Whether the question of jurisdiction was brought directly to the attention of the court does not appear, but the defendants were in court by counsel, who argued the cause, and the court must necessarily have decided that it had jurisdiction when it entered that decree. That decree did not provide for a lease or sale of the land; it simply fixed the lien. The decree for lease of the land was entered November 6, 1896, and the order of reference and for survey was entered April 14, 1897. The defendants were present when the survey was executed, but the record does not show that they were in court when the last two mentioned decrees were entered, nor when the original decree of sale was entered on July 10, 1897; but after the up-set bid of Walton was filed, on April 6, 1898, the defendants moved the court to dismiss the case; the particular grounds of this motion do not appear, but the motion is broad enough to include the question of jurisdiction. This was when a resale was decreed. Can we say that the court did not determine for itself that it had jurisdiction then? We think not. The motion to dismiss was argued by counsel and we have no doubt that was one of the questions raised and decided.

In the case of *St. Lawrence, etc. Co.* v. *Holt, supra,* the decree was attacked as void because of lack of definiteness in the plaintiff's bill. It did not in terms clearly show the title under which Holt and Mathews claimed the land, yet it did call upon them to deduce their respective titles to it. They refused to appear and the court decreed against them. The decree was attacked collaterally in an action of ejectment, and on writ of error this court held it was not void. In that case, Judge POFFENBARGER says, quoting in part from Vanfleet on Collateral Attack:

> " 'And as no one would think of holding a judgment of the court of last resort void of its jurisdiction were debatable or even colorable, the same rule must be applied to the judgments of all judicial tribunals. This is the true theory of judicial action when viewed collaterally. If any jurisdictional question is debatable or colorable, the tribunal must decide it; and an erroneous conclusion can only be corrected by some proceeding provided by law for so doing, commonly called a direct attack.' These considerations and authorities lead to the conclusion that in a case in which it is questionable or debatable whether a court has jurisdiction, and it erroneously decides that it does have, its judgment or decree is erroneous or voidable only, and subject to correction only by proper proceedings in the court which rendered it or by an appellate court, and is not void or open to collateral attack.''

In the present case under discussion, we think the jurisdiction of the circuit court was at least colorable, and it had jurdisiction to pass on that question, hence its decree was not void. That it referred the case to a commissioner of course makes no difference. The attack made is on the decree of sale. The defendants, when that decree was entered, objected to it; they then moved to dismiss the cause; they could not do that unless they were in court. Though no process was issued on the answer, they voluntarily submitted themselves in person to the jurisdiction of the court.

But if we be in error as to whether the decree of sale was

void, a still more serious question confronts the Simmonses. They twice appealed from that decree to this court. The first appeal was dismissed on their own motion. The second was dismissed agreed.

In the case of *Pethtel* v. *McCullough,* 49 W. Va. 520, 39 S. E. 199, it was held that "An order dismissing a case agreed is a bar to another suit on the same cause of action." Says Judge BRANNON in that case (pages 521-522):

> "What is the effect of an order of 'Dismissed agreed'? It is a bar to another suit upon the same cause on the principle of a compromise decree on the merits in equity, or a *retraxit* at common law, either of which is a bar to another suit. *Hoover* v. *Mitchell,* 25 Grat. 387, holds it *prima facie* final at least; but *Wohlford* v. *Compton,* 79 Va. 333, holds it final as to all matters which were actually, or might have been litigated in the suit. In *Siron* v. *Ruleman,* 32 Grat. 223, it is so declared. In *Jarboe* v. *Smith,* 10 B. Mon. 257, 52 Am. Dec. 541, it is held a bar 'between all parties on the original cause of action, unless there is an express stipulation that another suit may be brought.' Such is the great weight of authority. 1 Freeman, Judgm. 262; 1 Herm. Estop. 296; 1 Van Fleet, Former Adjud. s. 33. One decision of the United States Supreme Court denies this position. *Haldeman* v. *U. S.,* 91 U. S. 584. But *U. S.* v. *Parker,* 120 U. S. 89, holds the doctrine stated. So. 2 Black, Judgm. s. 706 says, that is settled law. The point is not decided in *Stockton* v. *Copeland,* 30 W. Va. 674. The words 'dismissed agreed' are very strong. Though the order is abbreviated, so far as it goes it imports compromise and adjustment and a decree ending the case on that ground. A compromise decree is final. *Lockwood* v. *Holliday,* 16 W. Va. 651; *U. S.* v. *Parker, supra.* A dismissal agreed is equivalent to a *retraxit* at common law, which is an 'open voluntary renunciation of his claim in court, and by this he forever loses his action.' 3 Bl. Comm. 296. In the words of the court in *Hoover* v. *Mitchell,* cited, this short expression is 'a declaration of record sanctioned by the judgment of the court, that the cause of action has been adjusted by the parties

themselves in their own way, and that the suit is dismissed agreed.' ''

That was an order entered by a circuit court. The case of *Fletcher* v. *Parker*, 53 W. Va. 422, 44 S. E. 422, involved an order entered by this court which read as follows:

"It appearing to the court by written agreement duly signed by the parties interested in this case, and filed with the papers that the matters and differences herein have been fully settled. And on motion of plaintiff in error by Miller & Read, his attorneys, this case is dismissed agreed at cost of plaintiff in error, except statute fee, which is ordered to be certified to the circuit court of Summers County."

It was held that this order was not a bar against the judgment below, but was merely a dismissal of the writ of error. In discussing the effect of the order, Judge BRANNON says (page 425):

"What is the effect of the dismissal by this Court of the writ of error from the judgment? It is claimed that it is *res judicata*, bars the judgment, satisfies it. We do not think so. In *Pethtel* v. *McCullough*, 49 W. Va. 520, we held that an order dismissing a case in a court of original jurisdiction is a bar to another suit on the same cause of action. What does a dismissal 'agreed' made in the Supreme Court upon a writ of error to a judgment of a circuit court import? Such a dismissal in any court cannot cover any more than is involved in the case. In the circuit court it involves the whole controversy. In the Supreme Court only error. The original controversy is merged in the judgment as a finality. Surely a dismissal in this court has no reference to the controversy, but leaves the judgment standing. Only reversal can affect it. A dismissal agreed of a writ of error, therefore, would purge error, would be a release of error, and bar another writ of error, as that error was involved in the suit called a writ of error."

But suppose the circuit court had no jurisdiction, what

was the effect of the order in this court dismissing the case agreed? If such an order releases error, does it release error as to jurisdiction? We hold it does. After such a dismissal the parties could apply no more to this court for relief from the decree. It would bar another appeal. Now the first question determined in this court on appeal or writ of error is that of the trial court's jurisdiction. If it did not have jurisdiction, that ends the discussion. It will go no further. It necessarily arises in every case, whether actually discussed or not. So in the case of *Simmons* v. *Simmons* it necessarily was involved and the error, if any, might have been corrected. Had the decree been void for want of jurisdiction, this court on that appeal would have vacated it, had the appellants left the matter to be determined by the court. But the parties did not do this. They voluntarily dismissed the case agreed. As was said in *Pethtel* v. *McCullough, supra,* "The words 'dismissed agreed' are very strong. Though the order is abbreviated, so far as it goes it imports compromise and adjustment and a decree ending the case on that ground. A compromise decree is final." Now that language referred to a dismissal in the circuit court; this is a dismissal in the Supreme Court of Appeals. The circuit court's action involves the very matter of the controversy; this court's only error in relation to the matter in controversy. A dismissal agreed in the circuit court dismisses the whole subject matter before it; a dismissal agreed in this court only the points of error that may arise on the record,—not only those which actually do arise but those which properly may arise, and this of necessity must include that of the jurisdiction of the trial court to determine the controversy in the first instance. But plaintiff's counsel say that to so hold confers jurisdiction on the trial court by consent of the parties, and that jurisdiction can not be so conferred. We do not think so. It simply amounts to this, that the parties have agreed that a decree already entered without jurisdiction, and though void for that reason, shall nevertheless be binding upon the parties. We know of no rule of public policy forbidding this and see no reason why even a void decree may not be the

basis of compromise and adjustment between the parties to it. Whether it be void or not may be a doubtful question. If lawyers and judges may differ about it, why not parties,—laymen—have doubt about it and use it as a basis in settling their controversies? Suppose the Simmonses in compromise had purchased from Mary Twinam her rights under her decree of sale and paid her a sum of money therefor, could they recover it back because the decree of sale was void? We think not. They had a right to make settlement and avoid further controversy. When they dismissed the case agreed in this court, they parted with all right to complain of lack of jurisdiction in the circuit court to enter the decree of sale. They are estopped by that order which was agreed to by them.

Let us see what immediately followed. That dismissal order was entered June 8, 1899. On June 15, 1899, just a week later, the parties assented to an order entered by the circuit court directing the special commissioner, who sold the land to Walton, to accept from him the balance of the purchase money, to make him a deed for the land, and to hold the purchase money until the further order of the court. That order was signed by their attorney. Then on June 24, 1899, we find these same defendants verifying a petition on behalf of their wives, asking the court to direct the special commissioner to pay their wives the purchase money in his hands, their wives claiming it as assignees of Mary Twinam. What must we conclude from all this? That the Simmonses intended to ratify and did ratify and approve the action of the court in making a sale of their lands. One who accepts and retains the benefits of a void decree is estopped from assailing it or denying its validity as against him. 15 R. C. L. 436, and cases there cited. Whether the proceeds of sale were actually paid under that petition does not appear, but these various steps irresistibly lead us to conclude that when the case was dismissed agreed by this court, the appellants then intended to do just what they did, ratify the sale and claim the benefits.

One other objection is noted by plaintiff's counsel to the

validity of the deed to Walton, that the record does not show that the special commissioner who made the sale ever gave bond, and we cited to the case of *Hagan* v. *Holderby,* 62 W. Va. 106, 57 S. E. 289, as authority for the proposition that the clerk's certificate appended to the notice of sale to the effect that the bond was given is not sufficient proof of its execution. But in that case the deed and certificate were admitted in evidence over objection. Here the plaintiffs introduced the deed and certificate as part of their own evidence, in order to show that plaintiffs and defendant claimed title from a common source. They ought not now to be heard to impugn their own evidence. They introduced the record of the chancery suit; if the special commissioner did not give bond they should have shown that fact.

We are therefore of opinion that the court erred in finding for the plaintiffs; that the defendant upon the record was entitled to judgment. And being of opinion that no better case for the plaintiffs could be made upon a new trial, we will reverse the judgment, set aside the finding of the circuit court and enter judgment here in favor of the plaintiffs in error, Joshua H. Yoho, George N. Yoho, and Vincent Yoho, heirs and devisees of Joshua Yoho, deceased.

*Reversed, and judgment for defendants.*